543 A.2d 520

Michael MINDALA, Administrator of the Estate of Thomas M. Mindala, Deceased; Eileen S. Stiffler, Administratrix of the Estate of Vickie Lee Mindala, Deceased; and Tracy Lee Osborne, formerly known as Tracy Lee Mindala, a minor, by Mellon Bank, N.A., Guardian of her Estate, Appellants,

v.

AMERICAN MOTORS CORPORATION, a Maryland Corporation; Jeep Corporation, a Nevada Corporation and wholly owned subsidiary of American Motors Corporation; AM General Corporation; the Commonwealth of Pennsylvania; the Commonwealth of Pennsylvania Department of Transportation; the Borough of Ephrata, Ephrata Communications Center; Harry H. Good, An Individual; and Michael Mindala, Administrator of the Estate of Thomas M. Mindala, Deceased, West Cocalico Township, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 21, 1986.

Decided May 31, 1988.

Reargument Denied Aug. 5, 1988.*

* Madam Justice Stout did not participate in the consideration or decision of the Application for Reargument.

Joseph A. McIntyre, William A. Atlee, Jr., Lancaster, Thomas Hollander, Pittsburgh, for appellants.

George A. Welsh, Sr. Deputy Atty. Gen., Charles W. Rubendall, Harrisburg, William E. Haggerty, Vincent J. Quinn, Lancaster, for appellees.

George C. Werner, Lancaster, for appellee West Cocalico Tp.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## ORDER

PER CURIAM.

The Court being evenly divided, the Order of the Commonwealth Court is affirmed.

STOUT, J., did not participate in the consideration or decision of this case.

HUTCHINSON, Former J., did not participate in the decision of this case.

ZAPPALA, J., filed an Opinion in Support of Affirmance in which NIX, C.J., and FLAHERTY, J., joined.

LARSEN, J., filed an Opinion in Support of Reversal in which McDERMOTT and PAPADAKOS, JJ., joined.

## OPINION IN SUPPORT OF AFFIRMANCE

ZAPPALA, Justice.

We granted Appellants' petition for allowance of appeal to determine whether the Commonwealth Court erred in reversing the trial court's order denying the Appellee's [1] motion for summary judgment. The basis of the Commonwealth Court decision was that the township owed no duty to Appellants since the intersectional vehicular collision occurred on a state-designated highway. 90 Pa.Cmwlth. 366, 495 A.2d 644 (1985).

The facts are as follows: [2] Thomas M. Mindala and Vickie Lee Mindala were killed and their infant daughter Tracy Lee Mindala severely injured as a result of an intersectional collision on Schoeneck and Indiantown Road in West Cocalico Township, Lancaster County. The collision occurred on November 25, 1979 at 7 p.m. Schoeneck and Indiantown Road are state-designated highways which run respectively in a north/south and east/west direction. However, on the west side of the intersection, Indiantown Road is a township road. For over forty years, this intersection has been controlled by stop signs situated on both the state and township sides of Indiantown Road. On the night in question, the Mindalas were travelling west on Indiantown Road while Harry Good was operating his vehicle in a southbound direction on Schoeneck Road. Ordinarily, westbound traffic on Indiantown Road is controlled by a stop sign erected at the intersection of Schoeneck and Indiantown Road. Unfortunately for the Mindalas, at the time that they reached the intersection of Schoeneck and Indiantown Road the stop sign was missing.

The day before the Mindala–Good collision, at approximately 3:30 to 3:45 p.m., a resident of nearby Clay Town-

---

1. Although there are multiple defendants in this action, only West Cocalico Township is the Appellee in this appeal. Hereinafter, for clarity, the Appellee will be referred to as township.

2. Since we are reviewing the propriety of granting a motion for summary judgment, we must review the facts in a light most favorable to the Appellants giving them the benefit of all reasonable inferences. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).

ship observed that the stop sign was missing on the east side of Indiantown Road. By way of deposition, that resident testified that the Schoeneck–Indiantown Road intersection is not easily recognizable by motorists travelling westbound on Indiantown Road and on the day that the stop sign was missing she observed a vehicle enter the Schoeneck–Indiantown Road intersection without stopping, almost causing an intersectional collision. Since she was unable to contact either a township official or the police chief upon reaching home, she reported the missing stop sign to the Ephrata Communications Center, which takes calls for the township police. The Communications Center attempted to contact PennDot on two occasions without any success. Around midnight, approximately eight hours after the stop sign was reported missing, the township police chief contacted the Communications Center and was informed of the missing stop sign and that prior efforts to notify PennDot were unsuccessful. Notwithstanding, the police chief did not attempt to contact PennDot or the state police barracks which was situated only four miles from this dangerous intersection.[3] The police chief did, however, proceed to the intersection to check the report and to attempt to locate the stop sign. Failing to find the stop sign, the police chief did nothing more although his patrol car was equipped with warning devices which could be used to alert motorists of the upcoming dangerous intersection. In addition, an affidavit was filed in response to the township's motion for summary judgment which indicated that the township had available a portable stop sign which could have been used at the intersection on a temporary basis.

Both township officials and the police chief testified by way of deposition that PennDot had specifically instructed the township that the township had no authority to maintain any traffic control devices on state-designated highways. Based upon these instructions, the township had never

3. Because the Communications Center had delivered the report of the missing stop sign to the township police chief, no further attempts were made by the Communications Center to contact PennDot.

installed or replaced a traffic control device of any kind on a state highway.

As the result of this tragedy, Appellants filed a complaint against the township alleging that the township was negligent in failing to erect the stop sign as well as negligent in failing to either take corrective action or warn motorists of the hazardous condition. After discovery had been completed, the township filed a motion for summary judgment alleging that it had no statutory duty to take corrective action of any kind or alternatively that the Appellants' claim was barred by the Political Subdivision Tort Claims Act, Act of November 26, 1978, P.L. 1399, 53 P.S. § 5311.-101 et seq.[4] The trial judge denied the motion but certified the issues as controlling questions of law. In denying the motion the trial judge held that the township owed a duty to motorists to at least notify the Commonwealth of the condition and undertake safety measures until such time as the Commonwealth could rectify the situation and that the Appellants' cause of action was not barred by the Political Subdivision Tort Claims Act.

In finding that the township did have a duty to react to the missing stop sign, the trial court adopted the reasoning of the New Jersey Supreme Court in *Bergen v. Koppenal,* 52 N.J. 478, 246 A.2d 442 (1968). In *Bergen,* the Court held that a township may be liable for a broken traffic control device on a state-designated highway if a police officer learns of a hazardous and emergent condition on the state highway which was not likely to be observed by a motorist and which presents an unusual risk of injury. A municipality may avoid liability by proving that the police failed to act because of competing demands upon the police force and such inaction was not palpably unreasonable.

As to the issue of governmental immunity, the trial court strictly construed § 221(*l*) of the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(4) and held that it was

4. This Act was repealed by § 333 of the Act of October 5, 1980, P.L. 693, No. 142 and substantially re-enacted in the Act of October 5, 1980, P.L. 693, No. 142, § 221(1), 42 Pa.C.S. § 8541 et seq.

unnecessary for the local municipality to have a possessory interest in the stop sign, for that exception to immunity to apply.

On appeal, the Commonwealth Court *en banc* reversed the trial court finding that the instant case was indistinguishable from *Rinaldi v. Giblin*, 70 Pa.Comwlth. 253, 452 A.2d 1126 (1982). In *Rinaldi*, the Commonwealth Court held that a township may not be held liable for failure to warn the Commonwealth of a missing traffic control sign on a state-designated highway, nor may a municipality be held liable for failing to correct a hazardous condition on a state highway because the exclusive responsibility for traffic control lies with the Commonwealth. Furthermore, the Commonwealth Court determined that the township did not have "care, custody or control" of the stop sign at the Schoeneck–Indiantown Road intersection thereby making the § 8542(b)(4) exception to governmental immunity inapplicable. From this decision we granted Appellants' request for our review.

This appeal presents two issues: whether the township owed a duty to the Appellants either to take corrective action or warn of the existing hazardous condition, and whether, if such duty does exist, this claim is barred by governmental immunity.

In *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), this Court abolished governmental immunity for municipalities. As a result of our action in rejecting governmental immunity in *Ayala*, our legislature enacted the Political Subdivision Tort Claims Act, *supra*, to restrict instances when an individual may sue a local agency. In so doing, the legislature granted an individual a cause of action in specifically limited situations:

§ 8542. Exceptions to governmental immunity

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the

injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

Thus, we must first determine whether the township owed a duty to the Appellants.

 Whether a duty exists is in the first instance a question of law. In *Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3rd Circuit, 1979) Judge Aldisert poignantly discussed the rather nebulous concept of "duty":

As Professor Prosser has emphasized, the statement that there is or is not a duty begs the essential question, which is whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. " '[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." Thus, we may perceive duty simply as an obligation to which the law will give recognition in order to require one person to conform to a particular standard of conduct with respect to another person.

These abstract descriptions of duty cannot be helpful, however, unless they are directly related to the competing individual, public, and social interests implicated in any case. An interest is a social fact, factor, or phenomenon existing independently of the law which is reflected by a claim, demand, or desire that people seek to satisfy and

that has been recognized as socially valid by authoritative decision makers in society. Certainly, the plaintiff in this case possessed an important interest in remaining free from bodily injury, and thus the law protects his right to recover compensation from those who negligently cause him injury. [The defendant], on the other hand, has an interest in the nature of its relationship with its adult students, as well as an interest in avoiding responsibilities that it is incapable of performing. (Footnotes omitted).

Thus, in reviewing whether a duty exists the court must determine the relationship between the parties and balance the various competing interests and costs involved in providing the requested protection. This requires a determination of the probability of harm in conjunction with the inconvenience of acting to prevent that harm. Using a similar analysis, our appellate courts have found no difficulty in holding that no duty is owed to the general public by a municipality's police force for criminal acts based upon a general exercise of police powers. Thus, our case law establishes that in those instances the victims must demonstrate a special relationship which warrants protection. *See, Chapman v. City of Philadelphia,* 290 Pa.Super. 281, 434 A.2d 753 (1981); *Melendez v. City of Philadelphia,* 320 Pa.Super. 59, 466 A.2d 1060 (1983); *Caldwell v. City of Philadelphia,* 358 Pa.Super. 406, 517 A.2d 1296 (1986). In *Chapman,* the Superior Court cited with approval *Riss v. New York,* 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968) and its discussion of the policy reasons behind the application of a restrictive rather than broad imposition of a duty upon the community to the public.

The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits.

This is quite different from the predictable allocation of resources and liabilities when public hospitals, rapid transit systems, or even highways are provided.

*Chapman v. City of Philadelphia*, 290 Pa.Super. 281, 434 A.2d at 755. In police protection, it is not for the courts but for the executive and legislative branches to determine in the first instances the allotment of financial resources and manpower. Therefore, those prior decisions which require a special relationship between the individual and the police prior to creating any duty under the general police powers are correct. The justification for the requirement of a special relationship is the general nature of the authority for the protection of the public at large and the determination that manpower and resources limit the ability to provide constant protection for all. The police are charged generally with protecting the public at large. This requires decisions impacting upon resources and manpower. Thus, if the decision makers are incorrect in their policies then the public at large can effectuate a change by removing those decision makers.

■ Unlike *Chapman*, *Melendez* and *Caldwell*, the present case presents a situation in which the Appellants argue that the police are given a *specific* rather than general authority to act and have the present ability to protect unknowing citizens.

Under § 6122 of the Motor Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1, 75 Pa.C.S. § 6122, the Commonwealth is given exclusive jurisdiction for the placement of traffic control devices on state-designated highways:

§ 6122. Authority to erect traffic-control devices

(a) General rule.—The department on State-designated highways and local authorities on any highway within their boundaries may erect official traffic-control devices, which shall be installed and maintained in conformance with the manual and regulations published by the department upon all highways as required to carry out the provisions of this title or to regulate, restrict, direct, warn, prohibit or guide traffic.

(1) Local authorities shall obtain approval of the department prior to erecting an official traffic-control device on a State-designated highway except where department regulations provide otherwise.

(2) Local authorities shall obtain approval of the department prior to erecting any traffic signal except in a municipality with a traffic engineer qualified in accordance with department regulations.

By authority of this provision, PennDot has adopted regulations regarding the installation of traffic control devices. (See 67 Pa.Code 211.1 et seq.). Specifically, under § 211.6 of the Pa.Code, a township is prohibited from erecting traffic control devices except by agreement, or, in a limited capacity without prior approval not here relevant. (*See* 67 Pa.Code 211.6(3)(i)–(x)). It is clear from the foregoing that without prior approval from PennDot, this township had no authority to replace or install a new stop sign. Unfortunately, this does not completely resolve this matter in that Appellants further allege that the township not only had a duty to install another stop sign, but also had a duty to either advise PennDot of the missing stop sign or take corrective action to protect motorists travelling Indiantown Road until such time as PennDot replaced the missing stop sign.

Section 6109 of the Motor Vehicle Code, 75 Pa.C.S. § 6109, delineates the township's authority with respect to the exercise of its police powers on state-designated highways within its boundaries.

§ 6109. Specific powers of department and local authorities

(a) Enumeration of police powers.—The provisions of this title shall not be deemed to prevent the department on State-designated highways and local authorities on streets or highways within their physical boundaries from the reasonable exercise of their police powers. The following are presumed to be reasonable exercises of police power:

. . . . .

(2) Regulating traffic by means of police officers or official traffic-control devices.

Therefore, under § 6109 a township is specifically given the authority to exercise its police powers on a state-designated highway when that highway comes within the township's boundaries. This authority includes the power to regulate traffic by police officers. In *Commonwealth v. Mercer*, 294 Pa.Super. 544, 440 A.2d 599 (1982), the Superior Court affirmed the conviction of a truck driver stopped by a local police officer on an entrance ramp to an interstate highway located within the township's borders. In affirming the conviction, the Court reasoned that the police officer's conduct represented a "reasonable exercise of the police power of the township, in avoiding a safety hazard to the travelling public, in protecting township roads and in enforcing the laws of the Commonwealth of Pennsylvania." 294 Pa.Super. at 549, 440 A.2d at 602. Thus township police are specifically given the authority to regulate traffic on a state-designated highway within their borders under certain circumstances.

As Judge Aldisert stated in *Bradshaw*, the question is "whether the plaintiff's interests are entitled to legal protection against defendant's conduct." 612 F.2d at 138. Whether or not a duty exists thus becomes a determination of whether we will recognize an obligation on the part of the Township police to act under these circumstances and whether their failure to do so was unreasonable.

It is clear that the Township police chief had no absolute duty to act in this matter, for the authority to act under § 6109 does not necessarily create such a duty. However, under these particular facts, the Township police chief had a duty to act and breached that duty. The police chief was informed by the Communications Center that the stop sign was reported missing, and prior efforts to notify PennDot were unsuccessful. Upon arrival at the scene, the police chief was made well aware of the dangerous highway condition to unknown motorists due to the missing stop sign. His patrol car was equipped with warning devices

which could alert motorists of the upcoming dangerous intersection. The Township also had available a portable stop sign which could have been used on a temporary basis. The state police barracks was situated only four miles from the intersection. Section 6109 gave the police chief the authority to regulate the traffic. Finally, there has been no assertion that more pressing matters required the police chief's attention. Under these facts, it is clear that the Township police had the authority to act under § 6109(a)(2) and the capability to act without draining either manpower or resources. Balancing the motorists' need for protection with the resulting burden imposed upon the Township police, the Township police's inaction results in the breach of a duty.

Appellee cites our decision in *Stevens v. Reading Street Railway Co.*, 384 Pa. 390, 121 A.2d 128 (1956) as authority for its position that no such duty exists. *Stevens*, however, is distinguishable in that there we held the police powers provision of the Motor Vehicle Code did not impose a duty upon a municipality to *repair* a state-designated highway. In *Stevens* we stated:

> Appellant also argues that since under § 521 of the State Highway Law, 36 P.S. § 670–521, the City is obligated to 'regulate traffic' and 'police' a State highway within a city, then the city has concurrent duty with the State to repair. The answer to this is that the word 'police' is used in the statute in its ordinary and well-defined meaning of maintaining law and order, and does not refer to repair and maintenance which are expressly placed upon the Commonwealth.

384 Pa. at 403–404, 121 A.2d at 135. Likewise, Appellee cites Commonwealth Court cases such as *Swank v. Bensalem Township*, 68 Pa.Comwlth. 520, 449 A.2d 837 (1982), *rev'd on other grounds*, 504 Pa. 291, 472 A.2d 1065 (1984); *Calvanese v. Leist*, 70 Pa.Comwlth. 251, 452 A.2d 1125 (1982); and *Rinaldi v. Giblin, supra,* for the identical proposition. In each of these cases, as in *Stevens*, the gravamen of the Plaintiff's cause of action was the failure

of the Commonwealth to perform its statutory duty of repair or maintenance of a state-designated highway. In the appeal sub judice, one of the harms complained of was the failure of the township police to actively regulate the flow of traffic to protect motorists within its jurisdiction. Since the township police possessed statutory authority to regulate traffic, had knowledge of a dangerous situation, and the capability to rectify the problem, a duty was created to reasonably exercise that authority and the failure to do so violated that duty. Therefore, for purposes of determining a motion for summary judgment, the Appellants have alleged sufficient facts to support their contention that the township owed a duty to the Mindalas and breached that duty.

Determining that the township owed a duty to the Mindalas, however, is not dispositive of this appeal. As we previously indicated, once we have determined that the acts complained of were actionable under a common law theory of negligence, 42 Pa.C.S. § 8542(a)(1), and were committed by officials acting within the scope of their authority, 42 Pa.C.S. § 8542(a)(2), we must then determine whether the acts complained of come within one of the enumerated exceptions to the general rule of governmental immunity.

In support of their theory that this action is not barred by governmental immunity, Appellants suggest that the exception enumerated in § 8542(b)(4) is applicable. That section states that a local agency may be liable for:

> (4) Trees, traffic controls and street lighting.—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred....

There is no question that this appeal does not involve trees, street lighting or traffic lights. Likewise, by definition a stop sign cannot be considered a "traffic control signal" (a device, whether manually, electrically or mechanically oper-

ated, by which traffic is alternately directed to stop and permitted to proceed. 75 Pa.C.S. § 102). The legislature has not provided us with a definition for "traffic sign" but common word usage would mandate that a "stop sign" be considered a traffic sign. 1 Pa.C.S. § 1903(a). In addition, § 8542(b)(4) requires that "traffic sign" be in the "care, custody or control" of the local agency and it is here that the Appellants' argument fails. The legislature could not have been more clear in its requirement that to impose liability upon the local agency, that agency must have the specific authority to act. For this cause of action to survive, the local agency must have had the authority to install a *stop sign* in order to come within this exception. As the previously cited testimony of the township officials and the police indicated, PennDot had specifically instructed the township that it had no authority under § 6122 to maintain traffic devices on state-designated highways within the township. Although the trial court was correct in its conclusion that each statutory exception in the act is to be narrowly interpreted, we are not free to change the clear meaning of the words to reach a desired result if a statute is unambiguous. 1 Pa.C.S. § 1921(b). Accordingly, we have no choice but to conclude that § 8542(b)(4) is inapplicable to this cause of action.

Having determined that § 8542(b)(4) is inapplicable and there appearing no other applicable exception to township's immunity, we must affirm the Order of the Commonwealth Court. Nothing can be gained by correcting an error of the Commonwealth Court as relates to the issue of duty when that court correctly disposed of the appeal on governmental immunity.

NIX, C.J., and FLAHERTY, J., join in this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

LARSEN, Justice.

At issue in this appeal is the liability of appellee, West Cocalico Township (Township) for damages sustained by the

appellants, who were involved in an automobile accident arising out of a dangerous condition caused by a missing stop sign on Indiantown Road, a state-designated highway in the Township. The lower court denied the Township's motion for summary judgment, holding: (1) that, under the circumstances, it could be found that the Township owed a duty to motorists using the highway in question, and (2) that the appellants' claims for damages made against the Township were not barred by the provision of the Political Subdivision Tort Claims Act.[1] On appeal, the Commonwealth Court, disagreeing with the conclusions of the lower court, reversed and remanded for entry of summary judgment in favor of the Township.

The factual background of this case involves a fatal accident which occurred on November 25, 1979 at approximately 7:00 p.m. at the intersection of Indiantown Road and Schoeneck Road in West Cocalico Township. At the time of the accident, Thomas M. Mindala was operating a Jeep motor vehicle in a westerly direction on Indiantown Road. Riding as passengers in the vehicle with him were his wife, Vickie Lee Mindala, and his daughter, Tracy Lee. The Mindala vehicle proceeded into the intersection without stopping and was violently struck by a vehicle traveling in a southbound direction on Schoeneck Road. The force of the collision caused the Mindala Jeep to roll over. All of the occupants of the Jeep were thrown from the vehicle. Thomas M. Mindala and his wife Vickie Lee Mindala were killed. The Mindala's young daughter, Tracy Lee, suffered serious injuries.

Schoeneck Road is a state designated highway running generally in a north-south direction. Indiantown Road is a highway running generally in a east-west direction. Indiantown Road east of Schoeneck Road is a state highway; west of Schoeneck Road it is a Township road. For more than forty years, traffic at this intersection was controlled by stop signs for vehicles traveling east and west on Indiantown Road. On the day of the tragic accident, the

---

**1.** 53 P.S. § 5311.101, et seq.

stop sign that had been on the state portion of Indiantown Road was missing. Without that stop sign the intersection was indiscernible by motorists traveling west on Indiantown Road—the direction the Mindalas were traveling. This lack of recognition was particularly severe after dark because of visual obstructions. There was evidence to indicate that at the time the accident occurred, the stop sign had been missing for more than twenty-seven hours.

Richard Fausnacht, Chief of Police of West Cocalico Township, learned of a report of the missing stop sign when he came on duty at approximately midnight on November 25, 1979. In a deposition, Chief Fausnacht testified that at 5:00 or 6:00 a.m. he drove to the intersection of Indiantown Road and Schoeneck Road and observed first-hand that the stop sign that was reported missing was indeed missing. He testified that he checked the area in an attempt to locate the sign but came up empty. Although he was convinced that the missing stop sign created a dangerous condition, he did not notify the state police, nor did he take any other steps to remedy or alleviate the hazardous situation.

In response to the lawsuit for damages filed by the appellants, the Township, inter alia, filed a motion for summary judgment. The Township's motion was based upon the contention that it had no duty of any kind with respect to the stop sign missing from a state-designated road. In the alternative, the Township argued that even if a duty could be found, the claims for damages were barred by the Political Subdivision Tort Claims Act.[2] The lower court rejected the Township's arguments and dismissed its motion.

The Commonwealth Court, in reversing the lower court's denial of the Township's motion for summary judgment, held that the instant case was controlled by its decision in *Rinaldi v. Giblin*, 70 Pa.Cmwlth. 253, 452 A.2d 1126 (1982). In *Rinaldi*, the claimant was injured when her vehicle was struck by an automobile that was making an illegal left turn on a state highway. Prior to the accident, a "No Left

---

**2.** *Id.*

Turn" sign was in place at the intersection. At the time of the accident, the sign was missing. The Commonwealth Court held that absent a statute, the defendant in this case, Falls Township, had no duty to notify the Commonwealth of the missing sign. Further, that court held that Falls Township had no liability for failing to correct a hazardous condition on a state highway.

In the present case, President Judge Crumlish of the Commonwealth Court filed a dissent and in it he points out that although *Rinaldi* did hold that a municipality has no duty to re-erect a missing traffic sign on a state highway, or to warn motorists of a dangerous condition existing on a state roadway, that holding is suspect and should be overruled. Judge Crumlish observed that, to support its holding, the *Rinaldi* court cited *Calvanese v. Leist,* 70 Pa. Cmwlth. 251, 452 A.2d 1125 (1982) and *Swank v. Bensalem Township,* 68 Pa.Cmwlth. 520, 449 A.2d 837 (1982) *rev'd on other grounds,* 504 Pa. 291, 472 A.2d 1065 (1984). *Calvanese* and *Swank* rely upon this Court's holding in *Stevens v. Reading Street Railway Co.,* 384 Pa. 390, 121 A.2d 128 (1956).

In *Stevens,* the question before us was whether the City of Reading had a duty to repair and maintain the surface of a state highway where the claimant was injured. We held that no liability could be imposed on the city without a statute compelling the city to make repairs and maintain the highway. We held that section 521 of the State Highway Law, 36 P.S. § 670–521 which obligates the city to "regulate traffic" and "police" a state highway within its municipal limits did not impose upon the city a duty of repair and maintenance. We said that the word "police" is used in the sense of maintaining law and order and did not refer to repair and maintenance. We concluded that the legislature placed the sole obligation for repair and maintenance on the Commonwealth. Thus, it is clear that the repair and maintenance of the surface of a state highway is an entirely different undertaking from that of controlling and regulating traffic in the face of a dangerous condition. Thus

*Stevens,* via its tortured route through *Calvanese* and *Swank,* does not support *Rinaldi.*

The Township's power to police and regulate traffic on a state-designated highway is set forth in section 6109 of the Motor Vehicle Code, 75 Pa.C.S. § 6109.

§ 6109. Specific powers of department and local authorities

(a) Enumeration of police powers.—The provisions of this title shall not be deemed to prevent the department on State-designated highways and local authorities on streets or highways within their physical boundaries from the reasonable exercise of their police powers. The following are presumed to be reasonable exercises of police power:

. . . . .

(2) Regulating traffic by means of police officers or official traffic-control devices.

Under the provisions of section 6109, the Township is authorized to exercise police powers on state-designated highways within its boundaries. *See Commonwealth v. Mercer,* 294 Pa.Super. 544, 440 A.2d 599 (1982). Although Section 6109 does not impose an absolute affirmative duty on the Township to exercise its police powers on state roadways, it is clear that the Township did have the power and authority to act in this case. Further, under the facts of this case, the Township police chief, with full knowledge of the dangerous situation that resulted from the missing stop sign, had a duty to act with respect to the danger then and there existing. The failure to so act amounted to a breach of that duty. I would hold that where a local municipality learns of an emergent road condition on a state highway within its borders which is unlikely to be observed by motorists and which involves a foreseeable risk of harm, that local municipality has a duty to act reasonably to police and control traffic on that highway. *See Bergen v. Koppenal,* 52 N.J. 478, 246 A.2d 442 (1968).

Moving on to the next question, the Commonwealth Court held that the Township was immune from liability because

the control and maintenance of the stop sign in question was the exclusive responsibility of the Commonwealth. Section 202(b)(4) of the Political Subdivision Tort Claims Act of 1978, 53 P.S. § 5311.202 (repealed) provides for liability to be imposed on a political subdivision as follows:

> A *dangerous condition* of traffic lights, lights or other traffic controls, street lights or street lighting systems or trees under the care, custody or control of the political subdivision, except that the claimant to recover must establish that *the dangerous condition* created a reasonably foreseeable risk of the kind of injury which was incurred and that the political subdivision had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. (Emphasis added.) [3]

The appellants argue that the operative language of the above statutory provision is "a dangerous condition of ... traffic control ... under the care, custody or control of the political subdivision ..." I agree that this is the key lan-

___

**3.** The accident in this case occurred on November 25, 1979. At that time the Political Subdivision Tort Claims Act of 1978, Nov. 26, P.L. 1399, No. 330; 53 P.S. § 5311.101, et seq. was in effect. Since then that act was repealed and in its place the legislature enacted the Political Subdivision Tort Claims Act of 1980, Oct. 5, P.L. 693, No. 142; 42 Pa.C.S.A. § 8541, et seq. The provision of particular concern in this case, section 202(b)(4) of the 1978 act, 53 P.S. § 5311.202(b)(4), was replaced by 42 Pa.C.S.A. § 8542(b)(4) of the 1980 act. Section 8542(b)(4) provides as follows:

> **§ 8542. Exceptions to governmental immunity**
>
> (b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> (4) *Trees, traffic controls and street lighting.*—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

guage. The question that arises from this statutory provision is not whether the Township had custody and control of the missing stop sign. The pertinent question is whether the Township had control of the *dangerous condition* of the missing stop sign. There is little question that the Township had control over the condition at the intersection which was caused by the missing stop sign. The Township had the power and authority under Section 6109 to take the steps necessary under the circumstances to regulate traffic and police the intersection in the face of the missing sign.

A jury could find that the missing stop sign caused a dangerous condition to emerge and that dangerous condition created a foreseeable risk of the kind of injuries suffered in this case. Inasmuch as I would hold that the Township had a duty to act in this case and further, that the Township is not immune from liability, a factfinder could find the Township liable for the appellants' injuries. I would reverse the order of the Commonwealth Court and remand for further proceedings consistent with this dissenting opinion.

McDERMOTT and PAPADAKOS, JJ., join in this Opinion in Support of Reversal.