596 A.2d 1241

**Marjorie WRIGHT, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION and East Norriton Township, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 4, 1991.

Decided Aug. 20, 1991.

92

Richard K. Masterson, for appellant.

Joseph B. Mayers, for appellees.

Before COLINS and McGINLEY, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

This is an appeal by Marjorie Wright (Wright) from an order of the Court of Common Pleas of Montgomery County (trial court) denying Wright's motion for post-trial relief.

Wright commenced this action as a result of a one car accident which occurred at approximately 11:00 p.m. on September 30, 1983. Wright was travelling north on Trooper Road toward the intersection of Trooper Road and Woodland Avenue in East Norriton Township. Trooper Road and Woodland Avenue are state owned and maintained highways. As Wright approached the intersection she was unable to see the stop sign which controls a "T" intersection because of the fog. A driver proceeding north to the stop sign must turn either right or left at the intersection. Wright proceeded through the intersection striking the curb running along the northern edge of Woodland Avenue and sustained severe injuries to her ankle.

On May 2, 1984, Wright filed a civil action alleging that the Department of Transportation (DOT) and East Norriton Township (Township) were negligent in knowingly allowing a dangerous condition to exist at the intersection and failing to take any measures to protect Wright and the general public from possible injury. A jury trial was held on July 12, 1988. Wright introduced evidence that the accident occurred as a result of the Township's and DOT's failure to place a "stop ahead" sign before the intersection, that the stop sign was obscured by trees, branches and telephone poles, and that a previously erected "double arrow" warning sign was not in place at the time of the accident.

At the close of Wright's case-in-chief the Township's request for a compulsory nonsuit was granted by the trial court because the intersection is under the control of the Commonwealth and Wright admitted she was unable to see the stop sign because of the fog. Eventually the jury attributed fifty-one percent of the causal negligence to Wright and forty-nine percent to DOT. Wright's timely request for post-trial relief was denied.

■ When reviewing a denial of a motion for a new trial, our scope of review is limited to a determination of whether there has been an error of law controlling the outcome of the case, or an abuse of discretion where the ruling turns on the weight of the evidence. *Commonwealth of Pennsylvania, Department of Transportation v. Consolidated Rail Corporation,* 102 Pa.Commonwealth Ct. 611, 519 A.2d 1058 (1986).

On appeal Wright contends: 1) that the trial court improperly nonsuited the Township; 2) that the trial court erred in excluding evidence of two similar accidents; 3) that the trial court failed to properly instruct the jury as to the applicable law; and 4) that the trial court committed numerous errors during the course of the trial.

Wright first contends that a nonsuit was improper because the Township is the acknowledged owner of the property on which the stop sign is located and that pursuant to 75 Pa.C.S. § 6112(a) the Township has a statutory duty to remove any foliage obstructing the sign from view. Wright asserts that the question of whether the foliage and a utility pole obstructed her view of the stop sign is a question of fact to be determined by the jury and not the trial court.

"[I]n reviewing a compulsory nonsuit, the plaintiffs are to be given the benefit of all favorable testimony and every favorable inference of fact arising therefrom; and all conflicts in the evidence are to be resolved in the plaintiffs' favor." *Stevens v. Department of Transportation,* 89 Pa.Commonwealth Ct. 309, 492 A.2d 490 (1985). A nonsuit may be entered only in a clear case. *Stevens.*

The trial court noted that the issue of whether Wright's view of the stop sign was obstructed is a factual question and "arguably, should have been left to the jury to determine." Opinion of the Trial Court, March 30, 1990, at 3. However, in its final analysis the trial court concluded that even if the view of the stop sign was obstructed the Township did not have a duty as a matter of law "to see that the stop sign was not obscured, if indeed it was

obscured." *Mindala v. American Motors Corp.*, 518 Pa. 350, 543 A.2d 520 (1988). Opinion of the Trial Court, at 3. Wright maintains *Mindala* is distinguishable from the present case and that the trial court erred.

In *Mindala*, Thomas Mindala, his wife, Vickie Lee, and their daughter, Tracy, had been travelling west on Indiantown Road, a state highway when their vehicle collided with another vehicle travelling south on Schoeneck Road, also a state highway, resulting in the deaths of Thomas and Vickie Lee and serious injury to Tracy. The stop sign controlling traffic travelling west on Indiantown Road was not in place at the time of the accident. No stop sign controlling traffic on Schoeneck Road had been erected. Prior to the accident the Chief of Police of West Cocalico Township (Township) had been notified of the missing stop sign. After the Chief had investigated the report and was unable to locate the stop sign he failed to erect a temporary sign or implement any steps to warn motorists of the dangerous condition. The Township had not erected, maintained or serviced the missing stop sign prior to the accident. The Court of Common Pleas of Lancaster County (trial court) dismissed the Township's motion for summary judgment finding that the Township had a duty to act and that the Township was not provided immunity pursuant to the Political Subdivision Tort Claims Act.[1]

On appeal, the Supreme Court affirmed. The Supreme Court determined that the Township had a duty to regulate traffic pursuant to 75 Pa.C.S. § 6109[2] which relevantly provides:

1. Act of November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §§ 5311.101–5311–808, repealed by the Act of October 5, 1980, P.L. 693. Similar provisions are now found in 42 Pa.C.S. §§ 8541–8564. The Political Subdivision Tort Claims Act (Act) was in effect at the time this action arose.

2. In *Mindala v. American Motors Corp.*, 90 Pa.Commonwealth Ct. 366, 495 A.2d 644 (1985), this Court determined "that the Township had no legal duty in regard to the missing stop sign" and "because the control and maintenance of the stop sign was the exclusive responsibility of the Commonwealth, the Township ... [was] not liable under the terms of the Act." *Id.*, 90 Pa.Commonwealth Ct. at 370, 495 A.2d at 645–646 (footnote omitted).

Specific powers of department and local authorities

(a) Enumeration of police powers.—The provisions of this title shall not be deemed to prevent the department on State-designated highways and local authorities on streets or highways within their physical boundaries from the reasonable exercise of their police powers. The following are presumed to be reasonable exercises of police power:

.　　.　　.　　.　　.

(2) Regulating traffic by means of police officers or official traffic-control devices.

In *Mindala* the Supreme Court concluded that the inaction of the police officer was a breach of the duty to regulate traffic but because the stop sign had not been under the care, custody or control of the Township none of the enumerated exceptions to governmental immunity applied.

■ Wright alleges [3] that the Township, as owner of the land, failed to perform a statutory duty pursuant to 75 Pa.C.S. § 6112(a) to remove the obstructing foliage.[4] Wright asserts that the Township's failure to remove the foliage falls within the exception at 42 Pa.C.S. § 8542(b)(4).[5]

**3.** Wright also alleges the Township was on notice that the overhanging foliage obscured the stop sign as a result of its investigation of a similar accident occurring approximately four months prior to Wright's accident.

**4.** 75 Pa.C.S. § 6112(a) provides that "[i]t is the duty of the owner of real property to remove from the property any tree, plant, shrub or other similar obstruction, or part thereof, which by obstructing the view of any driver constitutes a traffic hazard."

**5.** 42 Pa.C.S. § 8542(b) provides:
(b) **Acts which may impose liability.**—The following acts by a local agency or, any of its employees may result in the imposition of liability on a local agency:

. . . .

(4) **Trees, traffic controls and street lighting.**—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time

In this regard Wright contends that *Mindala* is distinguishable from the present case because the Township is the alleged owner of the land where the trees are located.

Wright attempted to establish that the Township owns the real property thereby imposing a statutory duty upon the Township to remove the foliage, the trees or the utility pole obstructing the view of the motorist. In support of her allegation of ownership, Wright relies upon the Township's answer to her interrogatories. Wright queried as to the Township's "legal, equitable or proprietary interest at the intersection or abutting property at the time of the accident." Plaintiff's Interrogatories Addressed to East Norriton Township, No. 47 at 34, Certified Record (C.R.) The Township responded that it had "[n]o interest in the intersection" and that it "own[ed] [the] abutting property at the southeast corner." Interrogatory No. 47 at 34, C.R. Wright maintains that the Township's ownership of the abutting property at the southeast corner resulted in the trees and utility pole being in the care, custody or control of the Township.

The record reveals that the trial court unduly restricted its review to whether the Township had care, custody or control of the stop sign. But even assuming *arguendo* that the jury found the Township owned the land and that the trees and utility pole were in the care, custody or control of the Township such a finding would not have affected the outcome of the trial. Wright's own testimony is her greatest obstacle to recovery. Wright, on direct examination, testified that she was familiar with the intersection of Trooper Road and Woodland Avenue and that she travelled this route twice a week for approximately six years. R.R at 36, 40, 41 and 46. Wright also testified that prior to her accident she was unable to see the stop sign [6] and that she

prior to the event to have taken measures to protect against the dangerous condition.

6. Mr. Morrison to Wright (direct examination)

was unable to see the trees allegedly obstructing the stop sign because of the fog.[7]

■ In *Peair v. Home Association of Enola Legion No. 751,* 287 Pa.Superior Ct. 400, 430 A.2d 665 (1981) a pedestrian brought an action against a property owner for personal injuries suffered as a result of a fall on a sidewalk. The property owner argued that the trial court erred by not entering a compulsory nonsuit because "the evidence showed that Mrs. Peair's negligence was greater than appellant's [property owner]." *Peair,* 287 Pa.Superior Ct. at 406, 430 A.2d at 668. The Superior Court affirmed the trial court stating:

> This is not to say that a court will never enter a nonsuit in a comparative negligence case. ... the issue of apportionment of negligence should not be submitted to the jury if the plaintiff fails to make out a case of negligence on the defendant's part in the first place. Also, ... a case may arise in which it may be proper to hold as a

Q. Okay. Were there any traffic signs of any kind on Trooper Road that you remember seeing as you were proceeding on it that night?
A. Well, that is what I was looking for, the stop sign, because I knew that there—you know, there is a stop sign there.
Q. Right.
A. But that night I didn't—and the fog was so great that I just did not see the stop sign.
R.R. at 49.

7. Mr. Sherr to Wright (cross-examination):
Q. Could you see the trees to your right as you were going up Trooper Road?
A. You could see, you know, a visible—I mean, like the shadow, shadow of it.
Q. And you didn't see the trees end so that you knew that you would be at Woodland Avenue?
A. No; the fog was so dense.
Q. The fog was so dense you couldn't see the trees so you knew you were at Woodland Avenue?
A. No, the fog was very bad.
Q. Mrs. Wright, are you telling us that the fog was so dense that night that you couldn't see the trees end at the intersection?
A. No, you couldn't see nothing.
R.R. at 145–146.

matter of law that the plaintiff's negligence was equal to or greater than the defendant's.... (citation omitted). *Id.*, 287 Pa.Superior Ct. at 408, 430 A.2d at 669. We believe this is such a case. Based on Wright's testimony even if there was negligence on the part of the Township in failing to remove an obstruction of the stop sign, Wright's causal negligence is greater than the Township's as a matter of law. We may still affirm the trial court, even if it errs, where the result is correct and the correct basis for the decision is clear on the record. *Rhoads v. Lancaster Parking Authority*, 103 Pa.Commonwealth Ct. 303, 520 A.2d 122 (1987). We must do so here.

■ Wright also alleges that the trial court erred by excluding evidence of two similar accidents. Wright sought to introduce into evidence a prior accident which occurred on May 22, 1983, involving a Mr. Charles Wall (Wall) and a subsequent accident which occurred within hours after the Wright accident, involving a Mr. and Mrs. Bell (Bell). Wright contends the Wall and Bell accidents are so similar to her accident that they should have been admitted to establish the existence of a dangerous condition at the intersection of Trooper Road and Woodland Avenue and that the dangerous condition caused the accident.

"[E]vidence of similar accidents occurring *at substantially the same place and under the same or similar circumstances* may, in the sound discretion of the trial Judge, be admissible to prove constructive notice of a defective or dangerous condition and the likelihood of injury." *Stormer v. Alberta Construction Company*, 401 Pa. 461, 466, 165 A.2d 87, 89 (1960) (emphasis in original). Such evidence "is admissible for the purpose of establishing the character of the place where [the accidents] occurred, [and] their cause...." *Yoffee v. Pennsylvania Power and Light Co.*, 385 Pa. 520, 542, 123 A.2d 636, 648–49 (1956), quoting *Ringelheim v. Fidelity Trust Co.*, 330 Pa. 69, 71, 198 A. 628, 629 (1938). "[P]ermitting the introduction of evidence of similar accidents is tempered by judicial concern that the evidence may raise collateral issues, confusing both the real

issue and the jury." *Whitman v. Riddell,* 324 Pa.Superior Ct. 177, 181, 471 A.2d 521, 523 (1984). "Exclusion of proper evidence which might have affected the verdict requires the granting of a new trial." *Lambert v. Durallium Products Corporation,* 364 Pa. 284, 287, 72 A.2d 66, 67 (1950).

Concerning the Wall and Bell accidents Wright attempted to demonstrate the following similarities: that the accidents occurred at the intersection of Trooper Road and Woodland Avenue in the early morning hours, that the stop sign at the corner of the intersection was obstructed by foliage and an utility pole, that a "stop ahead" sign was not erected at the intersection, that a yellow double-arrow warning sign [8] installed by DOT was missing, that the accidents were single vehicle accidents, and that the accidents occurred under foggy weather conditions. The trial court excluded the accidents stating "[i]f the evidence had been admitted, something like a full trial of both accidents, collateral though they be, would have been required, with the plaintiff striving to show the multiple ways in which they were similar while the defendants did the opposite." Opinion of the Trial Court at 7.

The question to be determined is whether the trial court abused its discretion and, if so, whether a new trial is appropriate. Assuming *arguendo* that the Wall and the Bell accidents had been admitted they would only be relevant to establish DOT's negligence and whether DOT's negligence was a substantial factor in causing Wright's injuries. Wright introduced expert testimony that DOT's negligence created a dangerous condition at the intersection. Mr. John Comiskey, a traffic engineer and accident reconstruction expert, testified that the stop sign was located too close to the trees, that a "stop ahead" sign should have been erected accompanied with a double-arrow warning sign because of the location of the stop sign near the trees and the occurrence of fog at the intersection. R.R. at

---

8. A double-arrow warning sign is "a large yellow sign with a double headed black arrow in the center of it" and would be "mounted" at the head of the intersection to alert motorist of the approaching intersection. R.R. at 215, 234.

205, 211, and 216. "To determine whether the wrongdoer proximately or legally caused the injury giving rise to the negligence action, there must be a finding that the wrong- doer's allegedly wrongful conduct was a *substantial factor* in bringing about the accident...." (emphasis in original) *Department of Transportation v. Phillips,* 87 Pa.Common- wealth Ct. 504, 519, 488 A.2d 77, 86 (1985).

The jury was given the opportunity to evaluate Mr. Comiskey's testimony as well as the other evidence and concluded that DOT was negligent and that DOT's negli- gence was a substantial factor in bringing about Wright's "harm". Verdict, Certified Record. In reality, Wright's complaint is not that the exclusion of the evidence of the accidents precluded her from establishing DOT's negligence and that DOT's negligence caused her injuries, but that the exclusion of the evidence resulted in the jury finding her more responsible for her injuries than DOT. Evidence of similar accidents is not admissible for such purposes. Even if the trial court erred, which we do not find, the error would have been harmless. The trial court excluded the Wall accident commenting that it was the only prior acci- dent and that only one prior accident does not necessarily establish a dangerous condition. The trial court noted that the cases cited by Wright in support of her position involved numerous accidents. *See Wyke v. Trzyna,* 81 Pa.Common- wealth Ct. 392, 474 A.2d 375 (1984) (evidence of seven accidents occurring within a two year period was admissi- ble); *Colangelo v. Penn Hills Center, Inc.,* 221 Pa.Superior Ct. 381, 292 A.2d 490 (1972) (evidence of a dozen accidents occurring within a month and a half was admissible). Im- portantly, as to both accidents, neither Wall nor Bell would have testified consistently with Wright's testimony. Wall would have testified that he was looking for a "double arrow sign located at the head of the intersection." R.R. at 418. Bell would have testified that he was "searching for any indication of the next available left-hand turn ... of the approaching intersection...." R.R. at 420. The trial court has great discretion in admitting or excluding evidence and

based upon the situation presented we find the trial court did not commit an abuse of discretion.

 Wright also alleges that the trial court erred in excluding the testimony of Corporal William F. Tolliver (Tolliver), a police officer of the Township, offered to establish that DOT was notified of the existence of the dangerous condition at the intersection. Wright contends that Tolliver's offered testimony established that the Wall accident report was sent to DOT one week from the date of the accident. Tolliver's testimony fails to support Wright's allegation. Tolliver stated that his duties included investigating and reviewing all accident reports to determine whether an accident was reportable or non-reportable.[9] Tolliver also stated that he did not personally send the Wall accident report to DOT and that he had no knowledge when the Wall accident report was sent.[10] The trial court did not abuse its discretion in excluding Tolliver's offered testimony because his testimony does not establish notice.[11] And again we must reiterate that DOT was found to be causally negligent. Any possible error is harmless because the jury did not find in favor of DOT because of lack of notice.

Wright further maintains the trial court failed to correctly instruct the jury on the applicable law. Specifically, Wright contends the trial court failed to charge the jury that the Township and DOT failed to maintain the intersection at Trooper Road in a reasonably safe condition, failed

9. A non-reportable accident is classified as an accident that does not involve injuries or damage to a vehicle rendering it inoperable. R.R. at 398.

10. Attorney Barbieri to Tolliver:
 Q: So the last contact with this report would be forwarding it over to the secretary in your office?
 A: Yes.
 Q: And, in fact, you don't even know precisely when she sent them out, correct?
 A: Yes, that's true. I don't know when she sent them out.
 R.R. at 403.

11. Subsequent accidents, such as the Bell accident, are admissible to establish dangerous condition and cause of injury, not notice. *See* *Packel* and *Poulin*, Pennsylvania Evidence, § 412.2 (1987).

to provide adequate guide and informational signing, and failed to establish an appropriate and safe speed limit for the highway. Wright also contends the trial court erred by failing to instruct the jury to consider the fog as a concurring cause.

■ A jury charge must be reviewed in its entirety in order to determine whether error was committed. *Pennsylvania State Police v. Howard*, 113 Pa.Commonwealth Ct. 31, 536 A.2d 476 (1988). A jury instruction constitutes reversible error if it is erroneous *and* harmful to the complaining party. (emphasis added) *Id.* The trial court refused to read numerous points for charge because it determined that the charges were verbose and did not relate to the issues in the case.

■ First, the trial court properly excluded any reference to the Township in the charge because it was no longer a party. As to DOT, the trial court's instructions were adequate. The trial court instructed the jury on the burden of proof, expert witnesses, arguments of counsel, negligence, contributory negligence, comparative negligence and the standard of care regarding state highways. See R.R. at 602–653. Second, the trial court did charge the jury concerning the duty of DOT to maintain the intersection in a reasonably safe condition. The trial court gave the following charges:

As to the Plaintiffs, the Commonwealth of Pennsylvania, Department of Transportation, has exclusive responsibility to maintain state highways. In this case, Trooper Road at its intersection with Woodland Avenue, is a state highway, being legislative route 46123. Therefore, under the law of this Commonwealth, PennDOT has the responsibility to maintain Trooper Road at its intersection with Woodland Road.

Fifteen, PennDOT owes a duty to all users of state highways to provide a reasonably safe highway.

At sixteen: in order to satisfy its duty to provide a reasonably safe roadway, PennDOT was and is required

to maintain Trooper Road in such a manner as to protect travelers from dangers which, by the exercise of normal foresight, careful construction, and reasonable inspection can be anticipated and avoided.

R.R. at 641–642. The trial court further instructed the jury concerning DOT's duty to provide adequate signs. The trial court charged that "the absence of [the stop ahead sign, the obstructed stop sign, and the absence of the double arrow sign] ... would be sufficient for you to determine that PennDOT was negligent, and that that negligence was a substantial factor in causing the Plaintiff's injury." R.R. at 640.

■ Also, the trial court denied Wright's request of the following charge:

In this case, you have heard evidence that there was fog present at the time of this accident which restricted Mrs. Wright's visibility as she approached the intersection. You have also heard evidence regarding the conditions of the traffic signs present at the intersection. If you find that the condition of the signs constituted a dangerous condition, and that the dangerous condition was a substantial factor or increased the risk of the occurrence of the accident, and that either the dangerous condition of the intersection or the fog could have been sufficient to bring about the harm suffered by Mrs. Wright, then PennDOT is liable for that harm.

Wright's Requested Point for Charge No. 13, R.R. at 571. The requested charge is imprecise and confusing and was properly excluded by the trial court.

■ Finally, Wright contends that the trial court erred in its charge to the jury concerning the obstruction of the stop sign and the absence of the stop ahead and the double arrow signs. The trial court gave the following charge:

It is the position of the Plaintiff, ... the absence of any of [the signs] would be sufficient for you to determine that PennDOT was negligent, and that ... negligence was a substantial factor in causing the Plaintiff's injury.

This is for you to decide. That is the contention of the Plaintiff....

R.R. at 640. Wright maintains the allegations concerning the signs, if believed, establish per se negligence as a matter of law and that the jury should have been so instructed. Wright asserts that the trial court's use of the term "contention of the Plaintiff" confused the jury as to their fact-finding role.

At the conclusion of the charge, the trial court asked counsel if there were any suggestions or exceptions to the charge. Wright's counsel informed the trial court that the charge concerning the signs was incorrect.[12] The trial court recharged the jury pursuant to counsel's request which included counsel's use of the term "contention of the Plaintiff."[13] We find no fault with the trial court giving the charge as requested.

A review of the trial court's charge in its entirety reveals that the trial court properly instructed the jury as to the applicable law. Any alleged potential confusion on the part of the jury is inconsistent with the findings that DOT was negligent and that DOT's negligence was a substantial factor in bringing about Wright's injuries. Wright's argument ignores that the jury found Wright's negligence contributed more to her injuries than DOT's.

12. Mr. Morrison, Wright's counsel to trial court:
Mr. Morrison: Your Honor, ... with regard to your instructions as to the contentions regarding the signs, ... I did listen very closely, and when you instructed the jury regarding the Plaintiff's burden of proof with regard to those elements, you used the conjunctive and to the effect that in order for the Plaintiff to establish that the signs presented a dangerous condition, I had to prove all three of those were somehow in error or somehow defective.

The Court: Yes, you're right. I'll change that.
R.R. at 633–634.

13. Mr. Morrison to trial court:
Mr. Morrison: It would be *Plaintiff's contention* that I only have to prove one, you know, any combination, one or more.
The Court: Yes. All right.
R.R. at 634 (emphasis added).

█ Lastly, Wright maintains the trial court erred in refusing to allow her to cross-examine her own witness and present rebuttal testimony. Wright subpoenaed Sergeant Stahl, a Township police officer to testify regarding the accident. Sergeant Stahl testified that he did not have any recollection of the accident. Wright attempted to refresh Sergeant Stahl's memory, first with the police accident report and then with his deposition. When Sergeant Stahl's memory was still not refreshed Wright unsuccessfully sought to impeach her witness. "It is established that counsel may cross-examine his own witness on a plea of surprise when the witness has given testimony which was unexpected, contradictory to statements which the witness had made earlier, and harmful to the party calling the witness and beneficial to the opposing side." *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371, 1376 (1986). Because Sergeant Stahl's testimony was not contradictory or harmful the trial court properly denied Wright's request to cross-examine.

Finally, Wright contends that the trial court erred when she was not allowed to testify in rebuttal that she did not see a double arrow sign. A review of Wright's testimony clearly indicates that she did not see anything. There was nothing for her to rebut and the trial court did not err.

Accordingly, we affirm.

ORDER

AND NOW, this 20th day of August, 1991, the order of the Court of Common Pleas of Montgomery County, at No. 84–07115, dated March 30, 1990, is affirmed.

COLINS, J., dissents.