## Hartman v. Miller

*Kenneth W. Johnson,* for plaintiffs.

*Wilbert H. Beachy III,* for defendant Douglas E. Miller.

*Alexander Ogle* and *Scott Scurfield,* for defendant Ryan L. Maust.

CASCIO, *J.,* March 31, 1993—This case is before the court on a motion for summary judgment filed by defendant Ryan L. Maust. For the reasons set forth herein, defendant's motion is granted.

### FACTS

The facts are undisputed. On May 31, 1988, a slo-pitch softball game was being played at the Listie Softball Field between teams sponsored by D'Arrigo's Pizza and Pizza Hut. Plaintiff Douglas E. Hartman was a player on the D'Arrigo's team; defendant Douglas E. Miller was a player on the Pizza Hut team. Defendant Ryan L. Maust was the home-plate umpire. Maust was also the supervisor of the Roof Garden Softball League, of which both teams were members.

At some point in the game, a situation arose whereby Miller was a base runner on second base and a base hit was hit to the outfield. Miller attempted to score

from second base and a throw to home plate was made by the outfielder. The specific sequence of events surrounding the arrival of the ball at home plate are in dispute but the result was a collision between Miller, the base runner, and Hartman, the catcher, that resulted in head and facial injuries to Hartman. The impact rendered Hartman partially unconscious and he was taken to the hospital. He is seeking recovery for his injuries.

Hartman's version of the sequence of events, which must be taken as true for the purposes of this motion, is as follows. Hartman was standing on or substantially on home plate just before the ball arrived from the outfield. When the throw arrived from the outfield, he caught the ball and pivoted to make the tag on Miller. At that time, Miller ran over Hartman rather than sliding into home plate. Hartman's injuries were caused by the collision he had with Miller. Hartman does not contend that Miller intentionally ran him over, but he says that he failed to slide as required by the rules of the game. Those rules are the Rules of the American Softball Association. We are advised that the applicable rule states that a base runner must slide into a base rather than attempt to run over a defensive player, that it is a violation of the rules to intentionally run over a defensive player, and that any player who does so is subject to ejection from the game.

Hartman claims that Maust, in his dual capacity as president of the league in general and umpire of this game in particular, failed to make the players in the league, and in this game, aware of the base running rules of softball, and that this lack of awareness is what caused the collision to occur. More specifically, Hartman says that Maust failed to inform all the players in the league of the rules, and that Maust failed to

call the players in this particular game together before the game and inform them of the rules.

## DISCUSSION

A motion for summary judgment may be sustained "if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b); *Marks v. Tasman,* 527 Pa. 132, 134, 589 A.2d 205, 206 (1991). Summary judgment may only be entered in cases which are clear and free from doubt. *Id.* at 134-35, 589 A.2d at 206. If the relevant facts are not in dispute, we may reach a conclusion as a matter of law. *Askew v. Zeller,* 361 Pa. Super. 35, 42, 521 A.2d 459, 463 (1987).

The moving party has the burden of demonstrating the non-existence of any genuine issue of fact. *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989); *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468-69 (1979). The motion must be considered in the light most favorable to the non-moving party, with all doubts resolved against the moving party, all reasonable inferences made in favor of the opposing party and all well pleaded facts of the opposing party accepted by the court. *Thompson* at 204, 412 A.2d at 469; *Dibble v. Security of America Life Insurance Company,* 404 Pa. Super. 205, 207, 590 A.2d 352, 353 (1991); *Lower Lake Dock Company v. Messinger Bearing Corporation,* 395 Pa. Super. 456, 461, 577 A.2d 631, 634 (1990).

With this standard in mind, we turn now to the merits of the case. Defendant Maust argues that he cannot be held liable because either he owed no duty to plaintiff,

or because plaintiff assumed the risk. Plaintiff argues that the defense of assumption of risk was abrogated altogether by our Supreme Court's decision in *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 437 A.2d 1198 (1981). In *Rutter,* Justice Flaherty filed an opinion urging the abrogation of assumption of risk as a defense, which was joined by Justices Larsen and Kauffman. Chief Justice O'Brien concurred in the result. Justices Roberts and Nix filed dissenting opinions and Justice Wilkinson joined in both dissenting opinions.

Justice Flaherty reasoned: "There is a serious question as to whether the doctrine of assumption of risk ... should be permitted longer to survive.... [W]e think it should not." *Id.* at 607, 437 A.2d at 1206. "[T]he complexity of the doctrine may not be worth the difficulty it causes, for assumption of risk is duplicative of the more widely understood concepts of scope of duty and contributory negligence." *Id.* at 612, 437 A.2d at 1209.

"We agree that the difficulties of using the term 'assumption of risk' outweigh the benefits. The issues should be limited to negligence and contributory negligence.... There is no need to introduce further complications.... [A]s is indicated in the Pennsylvania Suggested Standard Jury Instructions, 'cases which have evoked the doctrine to deny plaintiff's recovery would have produced the same result either by (1) the court's determination that, as a matter of law, defendant owed plaintiff no duty, or, by (2) the jury's determination that plaintiff's own negligent conduct was a substantial factor in bringing about the harm he suffered.' Section 3.04 (1981)." *Id.* at 613, 437 A.2d at 1209.

This analysis is similar to the one made in a case before our own court. In *Kuncher v. Raley,* no. 313

Civil 1985 (Somerset County, May 2, 1986), Fike, *P.J.*, President Judge Fike determined that assumption of the risk in the "secondary" sense is actually a form of contributory negligence. He stated:

"The problem arises in coordinating the doctrine of assumption of risk with the principles of tort law which define the duty of the alleged tort-feasor. In *Smith v. Seven Springs Farm Inc.*, 716 F.2d 1009 (1983), the Third Circuit Court of Appeals discussed this relationship at length. The court first differentiated two types of assumption of risk defenses, designating them 'primary' and 'secondary.' In its primary sense, assumption of risk 'involves the meeting of a subjectively known risk,' whereas assumption of risk in its secondary sense involves plaintiff 'exposing himself to a danger of which he was subjectively unaware but which would have been apparent had he used due care.' *Id.* at 1006. The court went on to explain that assumption of risk in its secondary sense, in fact, is a form of contributory negligence. The court noted that prior to comparative negligence, there really was no need to distinguish in detail among the defenses of assumption of risk in its primary sense, assumption of risk in its secondary sense, and contributory negligence, because each defense barred recovery, but that under the comparative negligence statute, since contributory negligence is not a complete defense, a more detailed examination of the forms of assumption of the risk was necessary. The court concluded that assumption of risk in its primary sense survives as a defense, even under comparative negligence principles, whereas assumption of risk in its secondary sense, since really a form of contributory negligence, does not survive as an absolute defense." *Kuncher* at 11-12. (footnote omitted)

The Supreme Court recognized that a major concern in *Rutter* was that the complexity of analysis in assumption of risk cases makes it extremely difficult to instruct juries, who must decide not only questions related to negligence, but also whether the affirmative defense of assumption of risk operates to bar recovery altogether. For this reason, the plurality in *Rutter* held that "except where specifically reserved by statute; or in cases of express assumption of risk or cases brought under 402A (a strict liability theory), the doctrine of assumption of risk is abolished." *Rutter* at 613, 437 A.2d at 1209.

However, as the Superior Court noted in *Emerick v. Carson,* 325 Pa. Super. 308, 315, 472 A.2d 1133, 1136 (1984), "because only three of the seven members of the court would abrogate assumption of the risk, this doctrine remains the law of this Commonwealth." Subsequently, our Superior Court, in *Crance v. Sohanic,* 344 Pa. Super. 526, 496 A.2d 1230 (1985), stated that "[a]ssumption of risk is still a defense in this Commonwealth...." "In *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983), the Supreme Court clearly stated that the doctrine still exists in our courts, in spite of the plurality opinion in *Rutter.*" *Id.* at 529, 496 A.2d at 1232. (citation omitted) Nine years after the *Rutter* decision our Superior Court again commented on the uncertain state of the law as it regards assumption of the risk in *Ott v. Unclaimed Freight Company,* 395 Pa. Super. 483, 493, 577 A.2d 894, 898 (1990), stating: "[A] majority of the Supreme Court has yet to directly address the issue of whether the assumption of the risk doctrine remains viable, and panels of this court have continued to apply the doctrine." See also, *Howell v. Clyde,*no. 40 W.D. Appeal Docket 1990 (Pa. Supreme Court, February 17, 1993). Therefore, we conclude

that assumption of the risk has not been abrogated until a majority of our Supreme Court states that it has. The question now becomes whether we should apply it to the case at bar.

The *Carrender* court had viewed the application of the assumption of risk doctrine as bound up with the question of whether the defendant owed any duty to the plaintiff. Our Supreme Court stated:

"By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owed the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers." *Carrender* at 188, 469 A.2d at 125. (citations omitted)

The *Carrender* court found its reasoning to be consistent with the plurality opinion in *Rutter* by saying: "The reasoning of this opinion is consistent with the opinion of Mr. Justice Flaherty in *Rutter,* which specifically noted that a holding that a risk has been assumed is in many cases tantamount to a determination that, as a matter of law, the defendant owed the plaintiff no duty." *Id.* at 189 n.6, 469 A.2d at 125 n.6.

Therefore, the general conclusion has been that the doctrine of assumption of the risk will be available to a defendant where the facts are such as to indicate that the defendant owed no duty to the plaintiff because of the nature of the plaintiff's knowing and voluntary conduct before the accident. *Howell v. Clyde, supra; Dantzler v. S.P. Parks Inc.,* 715 F. Supp. 680 (1989);

*Crance v. Sohanic,* 344 Pa. Super. 526, 496 A.2d 1230 (1985); *Commonwealth v. Harris,* 104 Pa. Commw. 580, 522 A.2d 184 (1987).

"Whether a duty exists is in the first instance a question of law." *Mindala v. American Motors Corp.,* 518 Pa. 350, 357, 543 A.2d 520, 524 (1988). The concept of duty was discussed in *Bradshaw v. Rawlings,* 612 F.2d 135, 138 (3d Cir. 1979):

"As Professor Prosser has emphasized, the statement that there is or is not a duty begs the essential question, which is whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. "[D]uty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection.' Thus, we may perceive duty simply as an obligation to which the law will give recognition in order to require one person to conform to a particular standard of conduct with respect to another person.

"These abstract descriptions of duty cannot be helpful, however, unless they are directly related to the competing individual, public, and social interests implicated in any case. An interest is a social fact, factor, or phenomenon existing independently of the law which is reflected by a claim, demand, or desire that people seek to satisfy and that has been recognized as socially valid by authoritative decision makers in society."

"Thus, in reviewing whether a duty exists the court must determine the relationship between the parties and balance the various competing interests and costs involved in providing the requested protection. This requires a determination of the probability of harm in conjunction

with the inconvenience of acting to prevent that harm." *Mindala* at 358, 543 A.2d at 524.[*]

Our Supreme Court addressed some of the risks of baseball in *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1973). Although *Jones* was decided before *Rutter,* we find that the rationale in the two cases is consistent. In *Jones,* an action was brought by a baseball spectator for injuries sustained when she was struck by a foul ball during pregame batting practice. Our Supreme Court concluded that because the patron was hit while properly using an interior walkway from the stadium's outer concourse to the seats, and this architectural feature was not inherent among baseball stadiums, the case could not be included in the "no-duty" rule cases such as patrons sitting in stands being hit by batted balls.

"The principles underlying our rules barring recovery in amusement facility cases, e.g., [flying golf balls, ordinary degree of darkness in a movie theater, roller coaster], cannot be extended to the kind of risk of harm claimed present here. Like the swinging gate, the dangerous grandstand stairway, and the hole in the floor of the stadium walkway, these concourse openings simply cannot be characterized as 'part of the spectator sport of baseball.' " *Jones* at 86-87, 394 A.2d at 551-52. (citations omitted)

In distinguishing the facts in its case from those which have been held "inherent risks," the *Jones* court cited *Goade v. Benevolent and Protective Order of Elks,* 213 Cal. 2d 183, 28 Cal. Rptr. 669 (1963), which stated:

---

[*] Although *Mindala* involved the duties of a township to take certain actions regarding traffic control, we find the reasoning applicable in the case at bar.

"In baseball, a sport often referred to as our 'national pastime,' it has been held that the spectator as a matter of law assumes the risk of being hit by a fly ball. But when a spectator is hit by a flying baseball bat the doctrine of assumption of the risk is not applied. The difference in the treatment of these two baseball spectators is explained by the fact that it is a matter of 'common knowledge' that fly balls are a common, frequent and expected occurrence in this well known sport, and it is not a matter of 'common knowledge' that flying baseball bats are common, frequent or expected." (citation omitted)

*Bowser v. Hershey Baseball Association,* 357 Pa. Super. 435, 516 A.2d 61 (1986), is in accord with *Jones.* In *Bowser,* our Superior Court addressed voluntary assumption of the risk of injuries incurred by a participant in a baseball game. After finding that the participant could not recover because he was a member of the defendant association, the court reasoned further:

"There is an additional reason why [the participant] cannot recover. When he agreed to participate on the field during the baseball tryouts, he voluntarily exposed himself to the risks inherent in baseball. One of the risks inherent in baseball is being hit by a batted ball. Having voluntarily exposed himself to the risk of being hit by a batted ball, Bowser cannot recover from the sponsor of the baseball event for injuries caused by this very risk.

"Earlier decisions which reached this result relied upon the doctrine of voluntary assumption of the risk. These decisions held that by attending a baseball game, a plaintiff knowingly accepted and assumed the reasonable risks inherent in the game. More recently, the rationale adopted by the courts for this rule is that *persons conducting the activity have no duty to warn*

*or protect participants against risks which are common, frequent, expected and inherent in the activity itself.* See *Jones v. Three Rivers Management Corp., supra,* 483 Pa. at 85, 395 A.2d at 551. *Thus, persons conducting an event are not negligent for failing to warn or protect a participant against risks which are inherent in the activity." Id.* at 440-41, 516 A.2d at 63-64. (emphasis added; citations omitted) It is clear that this reasoning applies with respect to Maust's participation in the game as umpire and as president of the league.

Plaintiff stated in his answers to interrogatories that he had played and umpired softball for 16 years. Therefore, it is not unreasonable to conclude that plaintiff should have been aware of the rules of the game, and that he proceeded to participate knowing that these rules were not restated to the participants before each game. Even if he was not aware of the rule before he proceeded to participate, we cannot find that reasonable minds could differ as to whether plaintiff was aware of the risk of being involved in a situation like the one that caused his injuries that day.

Even if plaintiff's contention that the defense of assumption of risk has been abolished in Pennsylvania is correct, we cannot find that defendant Maust owed a duty to plaintiff. Applying the test set forth in *Mindala* to determine whether a duty exists, we cannot find a high probability of harm. Collisions are quite frequent in any type of contact sport. On the other hand, we can imagine the inconvenience of having an umpire read the rules of the game before each game, especially where the plaintiff states that this particular rule was rule 8, section 8, page 198 of the applicable and obviously voluminous rules.

Therefore, we find that defendant Maust owed no duty to warn plaintiff of a risk of having bodily contact with another player, which risk we find is common, frequent, expected and inherent in the activity itself. For this reason, we will grant defendant Maust's motion for summary judgment.

## ORDER

And now, March 31, 1993, consistent with the foregoing memorandum, the motion for summary judgment filed by defendant Ryan L. Maust is granted.