634 A.2d 776

Helen Smolka BENNETT, Executrix of the
Estate of Edith Hogan, Deceased,

v.

PENNSYLVANIA TURNPIKE COMMISSION, Pennsylvania
State Police, Commonwealth of Pennsylvania and Wayne
Patnode and Rachel Reale, Department of Transportation,

Appeal of PENNSYLVANIA STATE POLICE, Appellant.

Helen Smolka BENNETT, Executrix of the
Estate of Edith Hogan, Deceased,

v.

PENNSYLVANIA TURNPIKE COMMISSION,
Pennsylvania State Police, Commonwealth
of Pennsylvania and Wayne Patnode,

Appeal of PENNSYLVANIA STATE POLICE, Appellant.

Helen Smolka BENNETT, Executrix of the Estate
of Edith Hogan, Deceased, Appellant,

v.

PENNSYLVANIA STATE POLICE, Pennsylvania Department
of Transportation, Commonwealth of Pennsylvania, Penn-
sylvania Turnpike Commission and Wayne Patnode.

Helen Smolka BENNETT, Executrix of the Estate
of Edith Hogan, Dec'd., Appellant,

v.

PENNSYLVANIA STATE POLICE, Pennsylvania Department of
Transportation, Commonwealth of Pennsylvania, Pennsylvania
Turnpike Commission, Wayne Patnode and Rachel Reale.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1993.

Decided Nov. 24, 1993.

---

George F. Bihn, III, Deputy Atty. Gen., for appellant, appellee PA State Police.

Theodore J. Caldwell, Jr., for appellee, appellant Helen Smolka Bennett.

Before PELLEGRINI and KELLEY, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

The Pennsylvania State Police (State Police) appeal from two orders of the Court of Common Pleas of Philadelphia County (trial court). The first order, entered June 2, 1992, dismissed its motion for post-trial relief in which it requested the trial court to enter judgment n.o.v. or grant a new trial.

The second order, entered July 1, 1992, granted a motion filed by Helen Smolka Bennett (Executrix), Executrix of the Estate of Edith Hogan, Deceased (Hogan/Deceased), to mold the jury verdict and assess delay damages against the State Police. The Executrix also is appealing two orders of the trial court. The first order, entered April 21, 1992, denied her motion to dismiss the Pennsylvania Turnpike Commission from this action. The second order, entered October 21, 1992, denied her motion to amend the trial court's June 1, 1992 order and correct assessment of delay damages.

## I.

These appeals come before us as a result of a fatal car accident involving Hogan on October 23, 1984. On that date, at 6:50 p.m., she was driving her car southbound in the left lane of the Northeast Extension of the Pennsylvania Turnpike (Turnpike). She was travelling at approximately 55–60 m.p.h. when she apparently saw something blocking her lane of traffic and swerved her car to avoid hitting the object.[1] Her car began to slide and spin to the right across the right lane of traffic and onto the shoulder. The front of her car hit and slid along the guardrail doing only minimal damage to the car. As the car began to rebound safely, the left side of her car by the passenger door smashed into the left rear corner of a car which had been abandoned at the point on the shoulder of the Turnpike. As a result of that contact with the abandoned car, she suffered massive abdominal, pelvic and head injuries, causing her death later that night.

It was later determined that the abandoned car belonged to Wayne Patnode (Patnode), whose wife, Cynthia, had loaned the car on the evening of October 18, 1984, to Rachel Reale (Reale), a friend of the couple. Reale was supposed to return the car that same night but failed to do so. Instead, the next morning, on October 19, 1984, she entered the southbound turnpike at the Mahoning Valley Interchange at 7:24 a.m.

---

1. At the time of the accident, it was dark and the witnesses were not sure what the object was. It was later identified as a long piece of tar paper or roofing paper which had caught on the median barrier.

Apparently, she ran out of gas a few miles south of the Quakertown Interchange, turned on the car's hazard lights and left the scene. The car was spotted later that same morning by State Trooper Robert L. Murray who placed an "abandoned vehicle tag" on the car.

During the day of October 19, 1984, Patnode attempted to contact Reale to find out the location of his car, but was unable to find her. Somehow he learned that his car was broken down somewhere on the Turnpike and called the Plymouth Meeting Barracks. They initially told him that they had no information about the car. He also contacted other State Police Barracks on the Turnpike, but they, too, had no information. Around midnight of that same day, the Pocono Barracks called Patnode and advised him that his car was broken down on the Northeast Extension of the Turnpike within the patrol area of the Plymouth Meeting Barracks. Patnode immediately called the Plymouth Meeting Barracks who still had no information about the car.

The next morning, on October 20, 1984, Patnode again called the Plymouth Meeting Barracks and was advised that his car was located at milemarker 20 on the Northeast Extension of the Turnpike. He informed the State Police that he would be unable to retrieve the car right away but to make sure it was off the road so as not to present a hazard. Not knowing what was wrong with his car, Patnode attempted to get various friends with tow trucks to help him get the car, but to no avail. On October 24, 1984, he finally was able to get assistance in retrieving the car and communicated this to the State Police. It was at this time that he was informed the car had been involved in a fatal accident. He eventually was able to pick up the car after the State Police had finished gathering evidence of the accident.

## II.

The Executrix filed a wrongful death and survival action against the Commonwealth of Pennsylvania, the Pennsylvania Turnpike Commission (Turnpike Commission), the State Po-

lice, the Pennsylvania Department of Transportation (Penn-Dot), Patnode and Reale, and demanded a jury trial.[2] She alleged that the Turnpike Commission, State Police and/or PennDot were negligent in failing to remove the roofing paper from the Turnpike, in permitting the abandoned vehicle to be on the Turnpike, and in permitting dangerous conditions to exist on the Turnpike. She also alleged that Patnode and/or Reale were negligent in causing or permitting the abandoned vehicle to be on the Turnpike, failing to remove the abandoned vehicle from the Turnpike, and causing or permitting a dangerous condition to exist on the Turnpike.

The Turnpike Commission filed an answer with new matter in the nature of a crossclaim asserting sovereign immunity as a defense, and arguing that if the Executrix's allegations were true as proven at trial, then it would be entitled to indemnification or contribution from the other defendants. The State Police and PennDot also filed answers with new matter alleging that they enjoyed sovereign immunity and were immune from suit. They further alleged that the accident was caused by the negligence of the Turnpike Commission, Patnode and Reale.

Prior to trial, the Turnpike Commission settled the Executrix's claim for $200,000 by executing a Joint Tortfeasor Release Agreement (Settlement Agreement). The Settlement Agreement specified that the Executrix was only releasing the Turnpike Commission from any claims and was not intending to release the Commonwealth of Pennsylvania, the State Police, PennDot or the other parties named in her action. The Settlement Agreement also provided that if there was a trial resulting in a final determination that the Turnpike Commission was a joint tortfeasor sharing joint and several liability with any other defendant, the total amount of damages prior to any molding of the verdict in accordance with 42 Pa.C.S. § 8521 would be reduced to the extent of the comparative percentage of fault attributable to the negligence of the Turn-

2. Reale was never found or served with a complaint.

pike Commission.[3]

At the trial held before a jury, besides introducing testimony as to how the accident occurred and the length of time the vehicle was left abandoned on the side of the Turnpike, as to the issue of whether the State Police's conduct fell within the real estate exception to sovereign immunity, the Executrix offered into evidence a Policy Letter issued by the Turnpike Commission dated March 16, 1992. The Policy Letter delegated to the State Police the responsibility of removing abandoned vehicles from the Turnpike. The State Police offered into evidence the Turnpike Commission's traffic regulations which predated the March 16, 1992 Policy Letter and provided that the Turnpike Commission or any peace officer had authority to remove abandoned vehicles. At the conclusion of the evidence, the Executrix made a motion to dismiss the Turnpike Commission as a party for lack of evidence. That motion was denied by the trial court's order dated April 21, 1992.

The jury returned an $850,000 verdict in favor of the Executrix and against the Turnpike Commission and the State Police, with a 50% share of liability to each for their negligence in allowing a dangerous condition to exist on the Turnpike causing Hogan's death. The jury found that Patnode was not negligent. The Executrix then filed a motion to mold jury verdict and assess delay damages. In that motion, she requested the trial court reduce the jury's verdict by 50% to $425,000 in accordance with the terms of the Settlement Agreement with the Turnpike Commission, and further mold the award of $425,000 against the State Police to $250,000 pursuant to the damage limitation set forth in 42 Pa.C.S. § 8528(b).[4] She also requested delay damages at a rate of

3. Prior to trial, the parties agreed by stipulation that all claims against the Commonwealth of Pennsylvania and PennDot were withdrawn. The Executrix also withdrew her claim against Patnode, but the State Police maintained its counterclaim.

4. That section provides that damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate.

59.55% of $250,000, or $148,868.15, bringing the total award against the State Police to $398,868.15.

The State Police filed a motion for post-trial relief requesting the trial court to enter a judgment n.o.v. or grant a new trial. The State Police contended that the trial court should have granted its motion for judgment n.o.v. and a new trial because its conduct did not fall within the real estate exception to sovereign immunity. It also requested the trial court to mold the verdict against the State Police to $50,000 based on the damage limitation and the $200,000 obtained by the Executrix in her Settlement Agreement. In the alternative, it requested the trial court to mold the verdict against the State Police to $125,000 for its portion of the liability. By order dated June 2, 1992, the trial court denied the State Police's motion.

On July 1, 1992,[5] the trial court reduced the $850,000 verdict against the State Police and Turnpike Commission by 50% in accordance with the Settlement Agreement to $425,000 against the State Police. The trial court then molded the verdict against the State Police to $250,000, and ordered that delay damages in the amount of $148,868.15 be assessed against the State Police for a total award of $398,868.15.

The Executrix filed a motion to amend the July 1, 1992 order and correct assessment of delay damages against the State Police. She cited the recent Pennsylvania Supreme Court decision of *Woods v. Department of Transportation*, 531 Pa. 295, 612 A.2d 970 (1992), for the proposition that delay damages against Commonwealth agencies should be calculated based on the amount of the jury's verdict, not on the amount of the award based on the statutory damage limitation. As such, delay damages against the State Police should be 59.55% of the jury verdict of $850,000, or $506,175. In the alternative, she argued that delay damages should be calculated based upon the full proportionate share of liability of the State Police

5. The order was actually signed on June 1, 1992, but entered on July 1, 1992. In an effort to create as little confusion as possible regarding the dates of the various orders in question which are close in time, we will refer to this specific order as the July 1, 1992 order.

of $425,000, or $253,087.50. By order dated October 21, 1992, her motion to amend the July 1, 1992 order assessing delay damages was denied by the trial court because it found no sufficient reason to apply *Woods* retroactively.

The State Police then filed two appeals with this court from the trial court's June 2, 1992 order dismissing its motion for post-trial relief and from its July 1, 1992 order granting the Executrix's motion to mold jury verdict and assess delay damages. The Executrix also filed two appeals with this court from the trial court's order dated April 21, 1992, denying her motion to dismiss the Turnpike Commission from this action and from the trial court's order dated October 21, 1992, denying her motion to amend the July 1, 1992 order and correct assessment of delay damages. In their appeals, the parties raise the following issues:

- whether the conduct of the State Police fell within the real estate exception or any of the other exceptions to sovereign immunity;

- whether the State Police had a statutory or common law duty to remove the abandoned vehicle from the Turnpike;

- whether an abandoned vehicle on the Turnpike constitutes a dangerous condition of the highway;

- whether the trial court should have credited the $200,000 paid by the Turnpike Commission in its Settlement Agreement to the verdict awarded against the State Police;

- whether delay damages should have been assessed against the State Police based on the full amount of the jury's verdict; and

- whether the trial court erred by not granting the Executrix's motion to dismiss the Turnpike Commission from her cause of action.

Of these issues, the core issue is whether the State Police's conduct falls within the real estate exception to sover-

eign immunity. If it does not, then the State Police is immune, making all other issues moot.[6]

### III.

■ The State Police contends that the trial court should not have submitted this case to the jury because the Executrix's cause of action is based on the premise that the State Police had jurisdiction over the Turnpike so as to fall within the real estate exception to sovereign immunity.[7] It argues that because the Turnpike is owned and controlled by and under the jurisdiction of the Turnpike Commission, legally it can have no "jurisdiction over the Turnpike." As such, the real estate exception does not apply and it cannot be held liable for failing to remove an abandoned vehicle.[8]

6. Our scope of review of an order denying a judgment n.o.v. is to determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference to be drawn from the evidence, and rejecting all unfavorable testimony and inferences. *Phillips v. City of Philadelphia,* 148 Pa.Commonwealth Ct. 175, 610 A.2d 509 (1992). Our scope of review of an order denying a new trial is to uphold that order unless the trial court abused its discretion or erred as a matter of law. *Id.* The jury's resolution of the factual issues is not to be disturbed unless it is against the weight of the evidence. *Roberts v. Dungan,* 133 Pa.Commonwealth Ct. 98, 574 A.2d 1193 (1990); *petition for allowance of appeal denied,* 526 Pa. 641, 642, 584 A.2d 323, 324 (1990).

7. That exception is found at 42 Pa.C.S. § 8522(b)(4) and provides the following:

**Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private person, *and highways under the jurisdiction of a Commonwealth agency*.... (Emphasis added.)

8. 42 Pa.C.S. § 8522(a) provides that all Commonwealth parties are protected by sovereign immunity. However, that immunity may be waived if a party shows that she possesses a common law or statutory cause of action against a Commonwealth party, and that cause of action falls within one of the nine exceptions to sovereign immunity found at 42 Pa.C.S. § 8522(b). *Bruce v. Department of Transportation,* 138

The State Police argues that it does not have jurisdiction over the Northeastern Extension of the Turnpike because jurisdiction involves control over the Turnpike System and its "towing" responsibilities do not constitute control. It contends that "jurisdiction" of the Turnpike System, including the Northeastern Extension, is solely vested in the Turnpike Commission by virtue of Section 6 of the Pennsylvania Turnpike Northeastern Extension Act, 36 P.S. §§ 660.6(e) and (f): [9]

The Commission shall have the following powers and duties:

(e) The Commission shall make necessary rules and regulations for its own government, and shall have power and authority to acquire, own, use, hire, lease, operate, and dispose of, personal property, real property and interests in real property, and to make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act, *and to employ* engineering, traffic, architectural and construction experts and inspectors, and attorneys, *and such other employes as may in its judgment be necessary,* and fix their compensation. . . .

(f) The turnpike when completed and opened to traffic *shall* be maintained and repaired by *and under the control of the Commission* through the Department of Highways of the Commonwealth, and all charges and costs for such maintenance and repairs actually expended by said Department of Highways shall be paid to it by the Commission, upon certification thereof, out of tolls. *Such turnpike shall also be policed and operated by such force of police, tolltakers and other operating employees as the Commission may, in its discretion, employ.*

Relying on these sections, the State Police asserts that the Turnpike Commission has exclusive control and jurisdiction over the Turnpike which includes the responsibility of employ-

Pa.Commonwealth Ct. 187, 588 A.2d 974 (1991), *petition for allowance of appeal denied,* 533 Pa. 626, 620 A.2d 492 (1993).

**9.** Act of September 27, 1951, P.L. 1430, 36 P.S. §§ 660.6(e) and (f).

ing police to monitor the Turnpike.[10] As such, it contends that it has been contracted by the Turnpike Commission to police the Turnpike by regulating traffic and enforcing traffic regulations, but that relationship does not extend further to also give it jurisdiction or control over the Turnpike.

The Executrix, however, argues that the Policy Letter is an "agreement" between the parties that the State Police would have jurisdiction over the removal of abandoned vehicles. That Policy Letter states in relevant part:

I. It will be the sole responsibility of the Pennsylvania State Police to authorize the removal of "Abandoned Vehicles" on the Turnpike System.

II. The Pennsylvania State Police must authorize removal by placing his/her signature, badge number and date in the place indicated on the form.

By delegating this responsibility for removing abandoned vehicles to the State Police, the Executrix maintains that the Turnpike Commission transferred to the State Police a type of "jurisdiction" over the Turnpike.

 Even though the Turnpike Commission has issued regulations at 67 Pa.Code § 601.6(b) making the State Police responsible for abandoned vehicles on the Turnpike, that responsibility is not tantamount to giving the State Police "jurisdiction" over Commonwealth real estate, i.e., the Turnpike, as that term is used in the Sovereign Immunity Act. When using the phrase in the real estate exception "and highways under the jurisdiction of a Commonwealth agency", the General Assembly meant jurisdiction by the Turnpike Commission, PennDot or another Commonwealth agency exercising control over the right-of-way of the highway of the type expressed in 36 P.S. §§ 660.6(e) and (f), not merely a state agency undertaking some activity on the highway.

Additionally, the Turnpike Commission owns the Turnpike System, and the Policy Letter indicates that the State Police ·

10. The State Police also points out that under 75 Pa.C.S. § 102, the Pennsylvania Turnpike is defined as the highway system *owned and operated* by the Pennsylvania Turnpike Commission.

only assumed responsibility for removing abandoned vehicles from the Turnpike, not jurisdiction over the Turnpike for that purpose. Moreover, by accepting responsibility for removing abandoned vehicles from the Turnpike, the State Police was only exercising its already assigned police function found at 71 P.S. § 250(g), which gives it the power to enforce the laws regulating the use of the highways of this Commonwealth. Therefore, the State Police do not have jurisdiction over the Turnpike and the real estate exception to sovereign immunity does not apply. Because we have held that this cause of action does not fall within the real estate exception, we need not reach any of the other issues raised by either party.

Because the State Police have proven that Executrix failed to establish that her claim fell within one of the exceptions to sovereign immunity contained in 42 Pa.C.S. § 8522(b), the State Police, as a Commonwealth party entitled to sovereign immunity, is immune from any liability for damages arising from Hogan's death. Accordingly, the trial court's order dated June 2, 1992, dismissing the State Police's request for post-trial relief in the nature of a judgment n.o.v. is reversed, and the other appeals filed by both the State Police and the Executrix are dismissed as moot.

## ORDER

AND NOW, this 24th day of November 1993, the order of the Court of Common Pleas of Philadelphia County entered June 2, 1992, dismissing the State Police's motion for post-trial relief, is reversed, and its order entered July 1, 1992, granting the Executrix's motion to mold the jury verdict and assess delay damages against the State Police is vacated. Similarly, the order of the Court of Common Pleas of Philadelphia County entered October 21, 1992, denying the Executrix's motion to amend the trial court's June 1, 1992 order regarding the delay damages is vacated. The order of the Court of Common Pleas of Philadelphia County dated April 21, 1992, denying the Executrix's motion to dismiss the Turnpike Commission is affirmed.