**Daniel C. SICKLES and Lorelei E. Sickles, individually and as Administrators of Estate of Sigrid A. Sickles, Deceased,**

v.

**CONSOLIDATED RAIL CORPORATION, Borough of Emmaus and Commonwealth of Pennsylvania, Department of Transportation,**

**Appeal of Commonwealth of Pennsylvania, Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 2001.

Decided June 1, 2001.

William A. Slotter, Allentown, for appellant.

Michael P. McIntyre, Allentown, for appellees.

Before PELLEGRINI, J., KELLEY, J., and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

The Department of Transportation (DOT) appeals from an order of the Court of Common Pleas of Lehigh County (trial court) denying its motion for summary judgment. We reverse.

On February 8, 1997, Sigrid A. Sickles died after she was struck by a train owned by Consolidated Rail Corp. (Conrail) while driving across the South Second Street railroad crossing in the Borough of Emmaus (Borough). The crossing involved a Borough street and Conrail railroad tracks. The crossing was not protected by automatic gates but did have traffic signs warning of the crossing, as well as warning lights.

Daniel and Lorelei Sickles (the Sickles) commenced a wrongful death and survival action individually and as administrators of the estate of Sigrid A. Sickles against Conrail, Borough and DOT.[1] The complaint alleged that the crossing was extra-hazardous and should have had gates which would have prevented the accident. As to DOT, the Sickles alleged that the accident was the result of DOT's negligent actions and omissions with respect to the crossing which the Sickles alleged was a dangerous condition of a highway under DOT's jurisdiction through the operation of Section 130 of the Federal Aid Highways Act of 1987, 23 U.S.C § 130 and DOT's assumption of a duty to upgrade same.

Before trial, DOT filed a motion for summary judgment arguing that the Sickles failed to state a cause of action and even if they did, DOT was immune by virtue of the doctrine of sovereign immunity. The trial court denied DOT's motion for summary judgment concluding that the Sickles presented evidence that DOT undertook a duty to upgrade the railroad crossing. Specifically, the trial court determined that although the Public Utility Commission (PUC) has exclusive authority to determine the order and manner in which railroad crossings are designed and constructed and which parties are to perform the required work and maintenance, 66 Pa.C.S. § 2702(a) and (c), DOT agreed with Borough to apply to the PUC in order to accelerate the upgrade of the South Second Street railroad crossing. Specifically, DOT contacted Borough and in April of 1996, drafted and entered into an agreement with Borough which required DOT to

---

1. The Sickles have since settled its claims against Conrail and Borough.

submit an application to the PUC for the installation of protective gates at the crossing. The trial court stated that an agency which undertakes to perform a discretionary duty exposes itself to liability for negligent performance of that duty. *Voren v. Bell Telephone Co.*, 150 Pa.Cmwlth. 507, 616 A.2d 66 (1992), *appeal denied*, 533 Pa. 647, 622 A.2d 1378 (1993). Because DOT had taken preliminary steps toward performing its obligation, it was for the factfinder to determine whether such action constituted a contractual agreement with the Borough, in which case it would have assumed a discretionary duty, or merely some preparatory action on DOT's part, which would not generate accountability. *Voren.* Here, if DOT entered into a contract with Borough, there would be a duty recognized at common law.

As to whether the injury fell within one of the exceptions to sovereign immunity, the trial court observed that 42 Pa.C.S. § 8522(b)(4) provides that the defense of sovereign immunity shall not be raised to claims for damages caused by "highways under the jurisdiction of a Commonwealth agency." Because the crossing at South Second Street is under the jurisdiction of the PUC, a Commonwealth agency, the trial court concluded that DOT's actions fell within real estate exception of 42 Pa. C.S. § 8522(b)(4).

After denying DOT's motion for summary judgment, the trial court filed an opinion in accordance with Pa.R.A.P.1925, wherein it concluded that in hindsight summary judgment should have been granted to DOT on the issue of sovereign immunity. Specifically, the court stated that the real property exception to sovereign immunity can only be applied to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). Although DOT may have exposed itself to liability for the negligent performance of a duty by failing to make an application with the PUC, it cannot be said that DOT created a dangerous condition of the highway within the meaning of 42 Pa.C.S. § 8522(b)(4). Rather the negligent actions averred by plaintiffs constituted negligent policies or activities as opposed to a dangerous condition of Commonwealth highways. *Shakoor v. Department of Transportation*, 63 Pa.Cmwlth. 571, 440 A.2d 647 (1981).

DOT has filed an appeal to this court wherein it alleges that the Sickles failed to state a cause of action against DOT, that it is immune from liability under the doctrine of sovereign immunity and that 23 U.S.C. § 409 prohibits the use of the agreement between DOT and Borough as evidence in this case.[2]

Initially, we observe that summary judgment should only be granted when there are no contested issues of fact and the law is clear. *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999). The record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

---

**2.** Pursuant to Pa. R.A.P. 312, DOT filed a petition with the trial court requesting certification of this case to this court so that we could determine whether they could be held liable under any exception to sovereign immunity for an alleged failure to secure a protective arm for the railroad crossing. The trial court issued an order on June 30, 2000, granting DOT's petition because the case involved questions of law where there were substantial grounds for difference of opinion regarding the issues involved. DOT filed a petition for permission to appeal with this court which we granted by order dated August 1, 2000.

Because of our determination that DOT's conduct does not fall within the real estate exception to sovereign immunity, we need not address the other issues raised. The provision found at 42 Pa.C.S. § 8522(b)(4) states the following:

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

....

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency....

In this case, the Sickles agree that the grade crossing where the accident occurred was under the jurisdiction of the PUC. (Sickles' brief at p. 14.) The argument advanced by Sickles and initially agreed to by the trial court is that because the grade crossing is under the jurisdiction of the PUC, a Commonwealth agency, DOT does not enjoy immunity because the Sickles have alleged a dangerous condition of a highway "under the jurisdiction of a Commonwealth agency." In other words, DOT is not immune from liability when the action sought to be brought against it results from a dangerous condition of a highway under the jurisdiction of *any* Commonwealth agency. We do not agree.

Both parties reference the case of *Bennett v. Pennsylvania Turnpike Commis-*

*sion,* 160 Pa.Cmwlth. 223, 634 A.2d 776 (1993), *petition for allowance of appeal denied,* 538 Pa. 628, 646 A.2d 1181 (1994). In that case, a motorist was driving on the Pennsylvania Turnpike, when she swerved her car to avoid hitting an obstruction. She then struck a car which had been abandoned on the shoulder of the turnpike and ultimately died. The executrix of her estate filed a suit against the Pennsylvania Turnpike Commission (Commission), the State Police, the Pennsylvania Department of Transportation (Department), and the owner and person who last operated the abandoned vehicle. A jury rendered a verdict in favor of the executrix. On appeal to this court numerous issues were raised. However, because of this court's determination that the State Police's conduct did not fall within the real estate exception to sovereign immunity, all other issues were rendered moot.

In determining that the State Police were immune, this court observed that the Commission, not the State Police had jurisdiction over the turnpike. In determining that the Commission had jurisdiction over the turnpike, we noted that Section 6 of the Pennsylvania Turnpike Northeastern Extension Act, 36 P.S. §§ 660.6(e) and (f) empowers the Commission to employ individuals to assist the Commission in the performance of its duties and states that the turnpike shall be maintained and repaired by and under the control of the Commission.[3] Moreover, under 75 Pa.C.S. § 102, the Pennsylvania Turnpike is defined as the highway system owned and operated by the Commission.

Although a policy letter existed between the Commission and State Police which delegated sole responsibility to the State Police for the removal of abandoned vehicles on the turnpike and the Commission

**3.** Act of September 27, 1951, P.L. 1430, 36 P.S. §§ 660.6(e) and (f).

issued regulations concerning the State Police's obligation to remove the vehicles, such did not amount to conferring control of the turnpike to the State Police. This court stated:

> When using the phrase in the real estate exception "and highways under the jurisdiction of a Commonwealth agency", the General Assembly meant jurisdiction by the Turnpike Commission, PennDot or another Commonwealth agency exercising control over the right-of-way of the highway of the type expressed in 36 P.S. §§ 660.6(e) and (f), not merely a state agency undertaking some activity on the highway.

*Bennett,* 634 A.2d at 781. As such, although the State Police were responsible for the removal of abandoned vehicles on the turnpike, the State Police did not have control or jurisdiction over the turnpike.

*Bennett* does not stand for the proposition that so long as the highway is under the jurisdiction of *any* agency, sovereign immunity is not available to a state agency that does not have jurisdiction over the highway. Under *Bennett,* where the Commission and State Police were both Commonwealth parties, because the Commission had jurisdiction over the turnpike this court concluded that the State Police were immune from liability as the executrix failed to establish that her claim fell within one of the exceptions to sovereign immunity. If, as Sickles concedes, the PUC, not DOT, had jurisdiction over the grade crossing where the accident occurred, DOT, in accordance with *Bennett* is immune from liability.

Moreover, the facts in this case do not lead to the conclusion that DOT was conferred a type of jurisdiction or control over railroad crossings as contemplated in *Bennett.*

In *Somerset County v. Pennsylvania Public Utility,* 132 Pa.Super. 585, 1 A.2d 806 (1938), the court stated that the PUC has exclusive jurisdiction of grade crossings and to determine the plans and specifications for a crossing site. In accordance with 66 Pa.C.S. § 2702(c), only the PUC has the power to regulate crossings:

> **(c) mandatory relocation, alteration, suspension or abolition.**—Upon its own motion or upon complaint, the commission shall have *exclusive power* after hearing, upon notice to all parties in interest, including the owners of adjacent property, *to order any such crossing* heretofore or hereafter constructed *to be relocated or altered,* or to be suspended or abolished upon such reasonable terms and conditions as shall be prescribed by the commission. In determining the plans and specifications for any such crossing, the commission may lay out, establish and open such new highways as, in its opinion, may be necessary to connect such crossing with any existing highway, or make such crossing more available to public use; and may abandon or vacate such highways or portions of highways as, in the opinion of the commission, may be rendered necessary for public use by the construction, relocation, or abandonment of any of such crossings. The commission may order the work of construction, relocation, alteration, protection, suspension or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth or an established nonprofit organization with a recreational or conservation purpose. (Emphasis added.)

In accordance with the above, the PUC has the exclusive power, upon its own motion, or upon complaint to alter a crossing. The PUC, after deciding upon an altera-

tion, may order the performance of such alteration to another entity.

 In this case, although the agreement between Borough and DOT, required DOT to apply to the PUC for an upgrade of the railroad crossing, DOT lacked the authority to make any improvements to the grade absent PUC approval. Moreover Section 130 of the Federal Aid Highways Act of 1987, 23 U.S.C. § 130, does not place a duty on DOT to upgrade the crossing whereby DOT would have jurisdiction over railroad crossings.[4] First, as previously stated, the PUC, not DOT has exclusive authority over railroad crossings. Secondly, 23 U.S.C. § 130(d) provides in pertinent part that "[e]ach state shall conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require ... protective devices, and establish and implement a schedule of projects for this purpose." Such language does not confer jurisdiction over railroad crossings to DOT.

Accordingly, the order of the trial court denying DOT's motion for summary judgment is reversed.

### ORDER

Now, June 1, 2001, the order of the Court of Common Pleas of Lehigh County at No. 1998 C 1286, is reversed and the case is remanded for entry of an order granting summary judgment in favor of the Department of Transportation.

Jurisdiction relinquished.

---

4. The Federal Aid Highways Act of 1987 makes federal money available to states for the elimination of hazards at railway crossings.