Mary Beth DAUBENSPECK, Administratrix of the Estate of Daniel R. Daubenspeck; Samuel S. Knight and Marta C. Knight, Administrator and Administratrix of the Estate of Brad Alan Knight; Kathleen L. Currier d/b/a Shooting Star Trucking Company, and Northland Insurance Company, Appellants

v.

COMMONWEALTH of Pennsylvania, Pennsylvania State Police.

Commonwealth Court of Pennsylvania.

Argued Jan. 30, 2006.

Decided March 16, 2006.

Robert Varsek, Oil City, for appellants.

William A. Dopierala, Sr. Deputy Attorney General, Erie, for appellee.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Mary Beth Daubenspeck (Ms. Daubenspeck), Administratrix of the Estate of Daniel R. Daubenspeck; Samuel S. Knight and Marta C. Knight (Mr. and Mrs. Knight), Administrator and Administratrix of the Estate of Brad Alan Knight; Kathleen L. Currier d/b/a Shooting Star Trucking Company (Currier); and Northland Insurance Company (Northland) (collectively, Appellants) [1] appeal the order of the Court of Common Pleas of Mercer County (common pleas court) which sustained the Pennsylvania State Police's (Appellee) preliminary objection in the nature of a de-

---

**1.** Currier and Northland, as subrogee of Currier, brought claims for property damage sustained by Currier and contribution and indemnity claims on behalf of Northland to recover proceeds paid by Northland to the Estate of Daniel R. Daubenspeck and the Estate of Brad Alan Knight in settlement of a federal lawsuit that stemmed from these same facts.

murrer and dismissed the Appellants' complaint against Appellee.

On February 13, 2002, Daniel R. Daubenspeck (Daubenspeck) was the rear seat passenger and Brad Alan Knight (Knight) was the front seat passenger in a 2001 Dodge Stratus traveling in the right westbound lane of Interstate 80 (I–80) in Findley Township, Mercer County, Pennsylvania. At or prior to 5:20 a.m. on February 13, 2002, the Dodge Stratus encountered an icy patch or build up of ice encompassing and covering a portion of I–80 at or near Milepost 20. The Dodge Stratus slid and collided with the rear bumper and/or under-ride bar of a commercial trailer truck owned by Currier that partially blocked the right westbound lane of I–80. In the collision the under-ride bar traveled through the passenger compartment of the Dodge Stratus and caused blunt force trauma to the heads of Daubenspeck and Knight. Each was pronounced dead at the scene of the accident.

After timely filing a praecipe for a writ of summons, the Appellants filed a complaint against the Appellee on December 17, 2004. The Appellants alleged that at approximately 3:00 a.m. on February 13, 2002, troopers from the Mercer Barracks of Appellee were dispatched to a single vehicle accident on I–80 at Milepost 21 in Findley Township, Mercer County. This earlier accident allegedly occurred when a motorist traveling westbound encountered ice and lost control of the vehicle, entered the median, and became disabled. When the troopers investigated the accident, they controlled traffic by igniting and placing road flares on the shoulder of the highway east and ahead of the accident scene and put on their emergency lights to warn other motorists of the accident and control the flow and speed of traffic. The troopers witnessed two other accidents due to the icy conditions. After the third acci-

dent, the troopers again placed road flares on the highway and turned on the emergency lights. The Mercer Barracks requested that the Pennsylvania Department of Transportation (DOT) correct the icy roadway conditions between Mileposts 21 and 19 on I–80. DOT did not arrive before the troopers left shortly before 5:00 a.m. Shortly thereafter, Daubenspeck and Knight were killed.

Ms. Daubenspeck sued the Appellee in a wrongful death and survival action. Mr. and Mrs. Knight also sued the Appellee in a wrongful death and survival action. Northland, as subrogee of Currier, sued the Appellee and sought indemnity and/or contribution for the amounts it paid to the other Appellants. Currier sued for property damage to its truck.

In the complaint, Ms. Daubenspeck and Mr. and Mrs. Knight alleged that the negligent, careless, and/or reckless acts of the Appellee were the direct, legal, and proximate cause of the injuries suffered by Daubenspeck and Knight. Specifically, Ms. Daubenspeck and Mr. and Mrs. Knight alleged that the Appellee failed to properly direct and control traffic at and near the site of a dangerous and hazardous area of I–80, failed to request the assignment of additional patrols by Appellee's personnel to assist in the direction and control of traffic at or near the location of the accidents until the dangerous roadway condition was alleviated, failed to remain on site, failed to ensure that the Appellee's patrol vehicles, flares, and personnel were utilized at the scene to direct and control traffic, failed to direct traffic and to ensure the safe and efficient performance of control of traffic in a hazardous area, failed to mark the dangerous portion of I–80 to warn motorists, failed to follow its own field regulations regarding the direction and control of traffic as required in circumstances involving traffic crashes and

adverse or hazardous road and weather conditions, failed to train its staff in patrolling, detecting, and addressing traffic crashes and adverse or hazardous road and weather conditions, and failed to address and reduce the risk and danger to traveling motorists and passengers posed by known hazardous and adverse roadway conditions.

The Appellee preliminarily objected in the nature of a demurrer on the basis that the Appellee was not subject to liability based upon negligent hiring and training because such claims were outside the exceptions to sovereign immunity; the Appellee did not own I–80, and did not have jurisdiction over I–80; and Appellee's duty to the public at large did not extend to individuals.

On May 27, 2005, the common pleas court granted the demurrer. The common pleas court noted that while sovereign immunity was properly raised as new matter and not as a preliminary objection, the Appellants did not object and briefed the issue. The common pleas court determined:

> Neither the court nor the plaintiffs [Appellants] here have been able to locate a single case where the State Police were subjected to liability for their allegedly negligent conduct in managing an accident scene. Plaintiffs [Appellants] simply argue that narrowing the real estate exception to this degree would be unreasonable....
>
> The powers and duties of the Pennsylvania State Police are set forth by statute at 71 P.S. § 250 (Purdons 1990). The State Police are generally charged with administering and enforcing the laws of the Commonwealth. The State Police are specifically empowered to "enforce the laws regulating the use of the highways of the Commonwealth." Id. § 250(g). The State Police have not been given the type of "jurisdiction" envisioned by the Commonwealth Court in *Bennett* [*v. Pennsylvania Turnpike Commission*, 160 Pa.Cmwlth. 223, 634 A.2d 776 (1993)], however, over the interstate roadway system in Pennsylvania. Thus, while the Pennsylvania State Police is a state agency undertaking some activity on interstate highways in Pennsylvania, it is not exercising the degree of "control over the right-of-way of the type expressed in 36 P.S. §§ 660.6(e) and (f)" entitled plaintiffs' [Appellants] to the real estate exception to sovereign immunity. *Bennett*, at 234.

Common Pleas Court Opinion, May 27, 2005, at 6–7.

In its Rule 1925 Opinion, the common pleas court added that I–80 is part of the federal interstate highway system and that under federal law the applicable state transportation department has the duty to maintain an interstate highway. DOT is that department in Pennsylvania and has "exclusive authority and jurisdiction over all state designated highways." Section 2002(a)(10) of the Administrative Code of 1929 (Code), 71 P.S. § 512(a)(10).[2] Further, no statute confers jurisdiction as contemplated in the real estate exception to sovereign immunity of an interstate highway to the Appellee. *See* 42 Pa.C.S. § 8522(b)(4).

The Appellants contend that the common pleas court committed an error of law when it sustained a preliminary objection in the nature of a demurrer to the complaint on the basis that the Appellee was immune from liability and did not fall within the real estate exception to sover-

---

2. Act of April 9, 1929, P.L. 177, *as amended.*

eign immunity under 42 Pa.C.S. § 8522(b)(4).[3]

■ The Appellants assert that the common pleas court erred when it failed to make the determination whether damages would be recoverable if the defense of sovereign immunity were not available. In order to maintain a cause of action against a Commonwealth party arising out of a negligent act, the plaintiff must establish that (1) the damages would be recoverable under the common law or under a statute creating a cause of action if the injury were caused by a person not having the defense of sovereign immunity and (2) that the injury falls within one of the defenses to sovereign immunity. *Fidanza v. Department of Transportation*, 655 A.2d 1076 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 677, 668 A.2d 1138 (1995). When a plaintiff brings an action against a Commonwealth party in negligence, the party must establish:

A *duty* or *obligation* recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

A failure on his part to conform to the standard required;

A reasonably close causal connection between the conduct and the resulting injury, and;

Actual loss or damage resulting to the interests of another. (Emphasis in original).

*Fidanza*, 655 A.2d at 1078, *quoting, Farber v. Engle*, 106 Pa.Cmwlth. 173, 525 A.2d 864 (1987).

■ In general, the police have a common law duty to protect the public when carrying out their duties, and the failure to act generally is not considered a harm to an individual. *Peak v. Petrovitch*, 161 Pa.Cmwlth. 261, 636 A.2d 1248 (1994). The police only have a duty to an individual if they enter into a special relationship with that individual. In order to prove a special relationship, a party must establish that the governmental entity was aware of the individual's situation or unique status, had knowledge of the potential for the harm the individual suffered, and voluntarily assumed, because of this knowledge, to protect the individual from the harm which occurred. *Id.*

■ Here, the Appellants did not establish that a special relationship existed between the Appellee and Daubenspeck and Knight. The Appellants did not, nor could they, establish that the Appellee was aware of Daubenspeck and Knight and their particular situation. This is the first element of the test for a special relationship.[4]

3. This Court's review is limited to a determination of whether on the facts alleged the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa. Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993). This Court, as with the common pleas court, must accept as true all well pled allegations and material facts averred in the complaint as well as inferences reasonably deducible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.*

4. The Appellants argue that the Appellee had a duty to regulate traffic on I–80 based on our Pennsylvania Supreme Court's decision in

*Mindala v. American Motors Corp.*, 518 Pa. 350, 543 A.2d 520 (1988). The Appellants concede that *Mindala* is factually different because it involved township police rather than state police. *Mindala* was the product of a 3–3 vote of our Pennsylvania Supreme Court and has no precedential value. *See Fairview Township v. Fairview Township Police Association*, 795 A.2d 463 (Pa.Cmwlth. 2002), *petition for allowance of appeal granted*, 572 Pa. 744, 815 A.2d 1043 (2003).

In *Mindala*, Thomas M. Mindala and Vickie Lee Mindala were killed and their infant daughter was severely injured as a result of an intersection collision. The intersection

■ Assuming arguendo, that the Appellee did have a duty to Daubenspeck and Knight, the Appellants still must establish that their claims were not barred by sovereign immunity. The Appellants contend that their claims come under the real estate exception to sovereign immunity [5] and that the Appellee had jurisdiction over I–80.

In *Bennett v. Pennsylvania Turnpike Commission,* 160 Pa.Cmwlth. 223, 634 A.2d 776 (1993), *petition for allowance of appeal denied,* 538 Pa. 628, 646 A.2d 1181 (1994), this Court addressed a similar situation. In *Bennett,* Edith Hogan (Hogan) was driving southbound in the left lane of the Northeast Extension of the Pennsylvania Turnpike. She swerved to avoid hitting an object. Her vehicle slid and spun across the right lane of traffic and onto the shoulder. As the car slid along the guardrail, the left side by the passenger door hit

was normally controlled by a stop sign. When the Mindalas came to the intersection the stop sign was missing. The day before the West Cocalico Township Police Department had been notified that the stop sign was missing and attempted to notify DOT. The efforts to contact DOT were unsuccessful. When the Chief of the Police Department was informed that the stop sign was missing, he did not contact DOT but attempted to find the stop sign. He failed to do so and did not use West Cocalico Township's (Township) portable stop sign to replace the missing sign on the state-designated highway. *Mindala,* 518 Pa. at 353–354, 543 A.2d at 522.

The Administrator of the Estate of Thomas M. Mindala, the Administratrix of the Estate of Vickie Lee Mindala, and Tracy Lee Mindala sued the Township and alleged that it was negligent when it failed to erect the stop sign as well as when it failed to either take corrective action or warn motorists of the hazardous condition. The Township moved for summary judgment and alleged that it had no statutory duty to take any corrective action or, alternatively, the claim was barred by the Political Subdivision Tort Claims Act, Act of November 26, 1978, P.L. 1399, *as* amended, formerly 53 P.S. §§ 5311.101–5311.803. The Political Subdivision Tort Claims Act was repealed and substantially reenacted as part of the Judicial Code, 42 Pa.C.S. §§ 8541–8542. The Court of Common Pleas of Lancaster County denied the motion but certified the question for appeal. This Court reversed. *Mindala,* 518 Pa. at 355–356, 543 A.2d at 523.

Before our Pennsylvania Supreme Court, two issues were raised: 1) whether the Township had a duty either to take corrective action or warn of the existing hazardous condition, and 2) whether the claim was barred by governmental immunity if a duty existed. Our Pennsylvania Supreme Court determined that under Section 6109 of the Vehicle Code, 75 Pa.C.S. § 6109, a township had the authority to exercise its police powers on a state-designated highway within its borders. Under the facts of this case, the Pennsylvania Supreme Court balanced the motorists' need for protection with the burden imposed on the Township police force and found that a duty was created to reasonably exercise the statutory authority to regulate traffic and the failure to do so violated that duty. However, our Pennsylvania Supreme Court found that the claim was barred by governmental immunity as the failure to install a traffic sign did not come under an exception. *Mindala,* 518 Pa. at 356, 360–364, 543 A.2d at 526–527.

*Mindala* was decided before this Court established the special relationship test in *Peak* to determine whether the police have a specific duty to an individual. Under the *Peak* analysis, no duty exists.

5. That exception to sovereign immunity is found at 42 Pa.C.S. § 8522(b)(4) and provides the following:

> **Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
> ....
> (4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency....

the left rear corner of an abandoned vehicle on the shoulder.[6] As a result of this collision, Hogan suffered injuries which caused her death. *Bennett,* 634 A.2d at 777. The executrix of Hogan's estate, Helen Smolka Bennett (Bennett), filed a wrongful death and survival action against the Commonwealth of Pennsylvania, the Pennsylvania Turnpike Commission (Commission), the State Police (Police), DOT, the owner of the abandoned vehicle, and the person who abandoned the vehicle. Bennett alleged that the Commission, Police, and/or DOT negligently failed to remove the object in Hogan's lane which caused her to swerve, negligently permitted the abandoned vehicle to be on the Turnpike, and negligently permitted dangerous conditions to exist on the Turnpike. Bennett further alleged negligence on the part of the owner and operator of the abandoned vehicle. *Bennett,* 634 A.2d at 778.

Before trial the Commission settled for $200,000. The jury returned a verdict in favor of Bennett in the amount of $850,000 against both the Commission and the Police with an equal allocation of liability. Bennett moved to reduce the verdict to $425,000, in accordance with her settlement agreement with the Commission and mold the award against the Police to $250,000 in accordance with the damages limitation set forth in 42 Pa.C.S. § 8528(b). She then requested delay damages against the Police in the amount of $148,868.15. The Police moved for a new trial or a judgment n.o.v. and asserted its conduct did not qualify as an exception to the real estate exception to sovereign immunity. The Court of Common Pleas of Philadelphia County granted Bennett's motion and

denied the Police's motion. *Bennett,* 634 A.2d at 779.

Both parties appealed to this Court. In the issue germane to the present case, the Police argued that it did not have jurisdiction over the Northeastern Extension of the Turnpike and asserted the Commission had jurisdiction under the Pennsylvania Turnpike Northeast Extension Act.[7] *Bennett,* 634 A.2d at 780–781. This Court agreed with the Police and determined that the Commission had jurisdiction for purposes of the real estate exception to sovereign immunity:

Even though the Turnpike Commission has issued regulations at 67 Pa.Code § 601.6(b) making the State Police responsible for abandoned vehicles on the Turnpike, that responsibility is not tantamount to giving the State Police "jurisdiction" over Commonwealth real estate, i.e., the Turnpike, as that term is used in the Sovereign Immunity Act. When using the phrase in the real estate exception "and highways under the jurisdiction of a Commonwealth agency", the General Assembly meant jurisdiction by the Turnpike Commission, PennDot or another Commonwealth agency exercising control over the right-of-way of the highway of the type expressed in 36 P.S. §§ 660.6(e) and (f), not merely a state agency undertaking some activity on the highway.

.... [B]y accepting responsibility for removing abandoned vehicles from the Turnpike, the State Police was only exercising its already assigned police function found at 71 P.S. § 250(g), which gives it the power to enforce the laws

6. State Trooper Robert L. Murray of the Pennsylvania State Police had placed an abandoned vehicle sticker on the abandoned vehicle four days before.

7. Act of September 27, 1951, P.L. 1430, 36 P.S. §§ 660.6(e) and (f).

regulating the use of the highways of this Commonwealth.

*Bennett,* 634 A.2d at 781–782.

Similarly, DOT has "exclusive authority and jurisdiction over all State designated highways" under Section 2002(a)(10) of the Code, 71 P.S. 512(a)(10). DOT also has authority to take over highways constructed by the Federal government under Section 1 of An Act Authorizing the Department of Highways and Counties, Cities, Boroughs, Towns, and Townships to Adopt and Take Over as Public Roads and Highways, Certain Highways Taken Over, Located, Extended or Constructed by the Federal Government or any Agency thereof, in the Exercise of the War Power, and Providing the Procedure Therefore, 36 P.S. § 2725.1.[8] Further, federal law provides that it is the duty of a state transportation department, which in Pennsylvania is DOT, to maintain any project constructed as part of the Federal-aid highway system, in other words, the Interstate Highway System of which I–80 is a part. *See* 23 U.S.C. § 116. Though the Appellee responded to accidents on I–80, it did not have jurisdiction over I–80 any more than it had jurisdiction over the Pennsylvania Turnpike in *Bennett.* The common pleas court did not err.

Accordingly, this Court affirms.

Judge FRIEDMAN concurs in the result only.

### ORDER

AND NOW, this 16th day of March, 2006, the order of the Court of Common Pleas of Mercer County in the above-captioned matter is affirmed.

8. Act of May 21, 1943, P.L. 279.